### WESTINGHOUSE ELECTRIC & MFG. CO. v. ROYAL WEAVING CO.

(Circuit Court, D. Rhode Island. May 12, 1902.)

No. 2,599.

1. PATENTS — PRELIMINARY INJUNCTION AGAINST INFRINGEMENT—EFFECT OF PRIOR ADJUDICATIONS.

The decision of a circuit court sustaining the validity of a patent, affirmed by the circuit court of appeals, should be accepted as controlling by a circuit court of another circuit on an application for a preliminary injunction against infringement, in the absence of contrary decisions, unless it is shown not only that new matters and new issues are presented, but that the new matter is such as might require a different decision as to the validity of the patent.

2. SAME.

Where the owner of a patent has established its validity in ably contested litigation, he is entitled to protection of the rights thus established, and should not be refused a preliminary injunction against another infringer merely because of voluminous or complicated matters of defense.

3. SAME—ANTICIPATION—ELECTRO-MAGNETIC MOTORS.

The Tesla patents, No. 381,968 and No. 382,279, each for electromagnetic motors, and No. 382,280, for a method of electrical transmission of power, considered on an application for a preliminary injunction, and held not anticipated by the French patents, No. 161,564, to Dumesnil, or No. 168,172, to Cabanellas.

In Equity. Suit for infringement of letters patent Nos. 381,968, 382,279, and 382,280, issued May 1, 1888, to Nicola Tesla, each relating to electro-magnetic motors for the electrical transmission of power. On motion for preliminary injunction.

Kerr, Page & Cooper and Horatio E. Bellows, for complainant.
Clifton V. Edwards and Arthur Stern, for defendant.

BROWN, District Judge. This is a petition for a preliminary injunction against infringement of patents No. 381,968, No. 382,279,

and No. 382,280, granted May 1, 1888, to Nicola Tesla. These patents have been sustained, after full consideration, by the circuit court of the United States for the district of Connecticut in New England Granite Co. v. Westinghouse Electric & Mfg. Co., 103 Fed. 951, and by the circuit court of appeals for the Second circuit, in the same case, 110 Fed. 753.

The defendant cites the language of the supreme court of the United States in Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856:

"Comity, however, has no application to questions not considered by the prior court, or, in patent cases, to alleged anticipating devices which were not laid before that court. As to such the action of the court is purely original, though the fact that such anticipating devices were not called to the attention of the prior court is likely to open them to suspicion."

The defendant contends that this court should not be governed by the prior decisions, for the reason that it has before it new issues and new evidence.

The defendant relies principally on the French patent to Dumesnil, No. 161,564, dated August 8, 1884, and upon the French patent to Cabanellas, No. 168,172, dated April 9, 1885. It is said that the Dumesnil and Cabanellas patents disclose what was not before the courts of the Second circuit, namely, that two single-phase synchronous motors could be coupled together, as by having their armatures mounted on the same shaft, and that these two motors might be run each by its own circuit of alternating currents, which might be supplied either by two single-phase alternating current generators mounted on the same shaft, but so as to give currents out of phase with each other, or that a single generator, such as was known in the prior art, and which furnished the alternating currents of differing phases, might have been used as the source of supply. While some of the general expressions of the opinions might have been modified, had the Dumesnil and Cabanellas patents been presented to the courts of the Second circuit, a somewhat careful and laborious examination of these patents, and of the interpretations of them by experts, leads to the conclusion that those patents, if produced to the courts of the Second circuit, would not have affected their decisions as to the nature and novelty of Tesla's invention, and as to the validity of the patents in suit. Neither does it seem to me that these patents would have affected the conclusion that the invention of Tesla was one of great novelty and merit. The question whether Tesla was anticipated in the production of a rotary magnetic field for power purposes, by the use of alternating currents of different phase, was fully and elaborately argued in these cases, and fully and closely considered by the courts. By the decisions it was found that:

"Tesla's invention, considered in its essence, was the production of a continuously rotating or whirling field of magnetic forces for power purposes by generating two or more displaced or differing phases of the alternating current, transmitting such phases, with their independence preserved, to the motor, and utilizing the displaced phases as such in the motor."

Also that he was the first to produce, by alternating currents, for power purposes, the shifting of the polar line of an annular magnet

through the entire circumference of the ring by the action of the magnetizing forces, properly related. A magnetic field wherein, by the co-operative action of two alternating currents, a resultant polar line progresses continuously towards the strengthening current, thus producing an effect as if a permanent magnet had been carried bodily around a rotatable armature, I am unable to discover in the patents of Dumesnil or Cabanellas. It is immaterial, therefore, to consider whether Tesla was the first to disclose the use of two alternating currents of different phase to rotate a shaft, or the criticism of those expressions in the opinions which may attribute to Tesla priority in the disclosure of the use of alternating currents of different phase for power purposes. The decisions upheld the Tesla patents, and these patents well describe and claim the rotary magnetic field. The sphere within which the defendant must show anticipation is narrower than that of the use of alternating currents of different phase, with an ultimate object of rotating a shaft. This renders much of the matter in the defendant's affidavits irrelevant to the question whether the prior decisions are controlling upon this petition for a preliminary injunction.

Narrowing the question, then, to whether the defendant has disclosed any anticipation of the rotary magnetic field for which Tesla's patents were upheld, we will consider the contention based upon the Dumesnil and Cabanellas patents. While the fact that these patents, though pleaded in previous litigation, were not put in evidence or brought before the courts, tends to awaken the suspicion that they have heretofore been considered too remote from the real questions presented by the Tesla patents, the defendant is still entitled to a consideration of the argument which it bases upon those patents.

Considering, first, the Dumesnil patent, and the drawings which are offered to show the "double crank action" of the alternating currents, I find in this patent no suggestion that two alternating currents could, by their combined use, produce such magnetic effects as would be sufficient in themselves to rotate an armature, much less a suggestion that, by the combined use of two currents, a continuous rotary effect could be produced like that of a magnet carried bodily around the armature. To couple two single-phase synchronous motors upon one shaft, displacing the poles of one armature angularly with respect to the other, so that one motor expends its maximum effort while the other expends its minimum effort, does not seem to me to exhibit the Tesla invention as described and claimed in the Tesla patents. In the opinion of Judge Shipman, it is stated that "Tesla must have a continuously rotating field." The combination of two single-phase machines may have a "resultant" as distinguished from a summative effect upon the shaft; but the "resultant" of the operation of two machines is a different thing from the magnetic resultant of two currents upon a common element, as a Tesla ring or an armature within that ring.

If two single-phase machines are capable of rotating a shaft better than one machine, it is because the mechanical action of each single-phase machine is communicated through a shaft to assist the other machine. The armature of one machine would then be subjected,

first, to a magnetic effort from its own field magnet, then to a mechanical effort from the shaft, which would bring it in position for the next magnetic impulse. The whole operation of the two single-phase machines in combination would be from intermittent magnetic and mechanical efforts,—neither magnetic field would be rotary.

To show Dumesnil's combination of two single-phase machines, however, it is necessary to add another factor,—the action of the magnetic poles of his armatures. Dumesnil nowhere suggests that continuous rotary action or tendency will result without the opposition of the magnetism of the armature to the magnetism of the field poles, or that by induction the field poles will properly magnetize the armature. Dumesnil, therefore, does not anticipate, since he fails to show that two alternating currents can, merely by combination of their magnetic effects, produce a continuous rotary effort, or that the action of two different magnetic forces upon a common element will give a resultant magnetic pole which exerts its force at positions intermediate of the field poles.

If we concede that Fig. 9 of the Hering affidavit might be considered as a mere mechanical consolidation of Figs. 7 and 8, we cannot accept the statement that Dumesnil shows beyond question the arrangements of Figs. 7 and 8 as adequate to produce a constant rotary effect upon a shaft. Dumesnil nowhere discloses or suggests the idea that such an electrical device as is shown in Figs. 7 and 8 can produce a rotary effect upon a shaft. The magnetic poles of the armature are described by him as features essential to rotary motion. His patent must be considered as a mere publication, giving a description and plan of operation. To make the figures of the Hering affidavit illustrate both Dumesnil and Tesla, it is necessary to ignore what Dumesnil proposes as an essential feature. Dumesnil, in my opinion, does not show a magnetic polar line, which is the resultant of two alternating currents of different phase; neither does he show any plan for producing a rotary effect merely by the unaided action of two alternating currents.

The patent to Cabanellas: This patent, upon many readings, seems to me to be fairly characterized by the complainant's counsel as "expressed in such obscure and indefinite terms as to be hopelessly unintelligible, except in a few unimportant particulars," and as requiring an exceptional exercise of the imaginative powers in translating its phrases into electrical diagrams. It is contended that Cabanellas, like Dumesnil, contemplated arranging two single-phase machines side by side with the elements displaced so as to displace the phases of the currents, and thus get a continuous rotary effort from two currents. But, like Dumesnil, Cabanellas fails to show a magnetic pole which is the resultant of two alternating currents. When, therefore, the defendant's experts say that the armatures of Dumesnil and Cabanellas are caused to rotate "by the rotation of resultant magnetic attractions set up by the joint action of two or more alternating currents of different phases," and that "these features of the prior Dumesnil and Cabanellas patents cover the ground of the Tesla patents in suit, and in substantially the same manner, when the said patents are given a broad interpretation in accordance with the decisions of the court,"

their testimony must be regarded as based upon a misinterpretation of the decisions of those courts, and upon a failure to recognize that it was expressly found that Tesla must have as a resultant of the currents a continuously rotating field of magnetic forces. The "resultant" of the decisions is that which is produced by combining upon a common element the magnetism created by two alternating currents. This magnetic resultant, applied to power purposes, I understand to be the Tesla invention. The defendant's "resultant" is not a magnetic resultant, but merely the rotation of the armature.

Conceding that Dumesnil, Cabanellas, and Tesla all rotate an armature, the point for comparison is as to the way in which this rotation is accomplished. Conceding, further, for the purposes of this petition, that all employ alternating currents of different phase, Tesla alone discloses means whereby two alternating currents may so magnetize a common element as to produce a force with a constant rotary effect. Dumesnil and Cabanellas, at best, show the combined use of two motors of an old type having the characteristic defects of such motors, and lacking the characteristics of the Tesla motors. Even if two of those motors can assist each other by so timing their mechanical efforts that one exerts its maximum effect while the other exerts its minimum effect, I do not find in such a combination of two machines the invention of Tesla, nor the "rotary field" which was apparently conceded by the defendant in the prior suits to be the proper subject-matter of controversy in determining the validity of the Tesla patent.

This defendant seeks to show anticipation by an interpretation of the prior decisions which is too broad, and does not, in my opinion, show anticipation of what was decided to be the Tesla invention and the subject-matter of his patents.

The question of infringement seems to be substantially determined by the prior decisions.

The questions of laches and estoppel do not require extended discussion. These matters were ably and carefully presented at the hearing, and the opinion formed by me at that time was adverse to these contentions. Upon an examination of the entire record relating to these points, my opinion is confirmed that this defendant decided the question of adopting its motors as a mere business proposition; that it contemplated, as a part of this proposition, the risk of infringing the complainant's patents, and took the risk with its eyes open, relying upon protection from its vendors or from others; consequently, upon this hearing, it must stand by its business proposition. I fail to see that the defendant has been in any way inequitably treated by the complainant.

It is implied by the argument that, if a patentee does not see fit to shape his business to suit the wishes of persons who desire to use his invention, this in some way creates an equity which entitles such persons to use the invention, in such specific form as they prefer, without the consent of the patentee. I see no ground for thus abridging the rights of a patentee.

The objection to granting a full preliminary injunction is the hardship which would result to the defendant and its employés from preventing the use of the motors now installed in the defendant's factory.

This objection, however, is insufficient to deprive the complainant of all right to a preliminary injunction, but goes rather to the question of the extent of the decree. The record upon this petition is voluminous, and we must recognize the possibility of error upon a subject of considerable complication and difficulty, and should seek to avoid so far as possible mischief which might arise before such error can be corrected. It is also due to the complainant that we should recognize that it has established the validity of the patents after meeting and overcoming a most skillful and elaborate defense, and that its rights, thus established, should not be evaded or rendered worthless by unnecessary delay in their enforcement. While there are objections to determining questions like those raised upon this petition, save upon final hearing, the court must also consider that it is objectionable to refuse an injunction merely because of voluminous or complicated matters of defense.

This defendant, to avoid the effect of the former decisions, should show, not only that new matters and new issues are presented, but that the new matter might require a different decision as to the character of Tesla's invention and as to the validity of his patents. Though the argument for the defendant has been presented forcibly and with ability, I am of the opinion that the defense to this petition is insufficient, since it does not seem to me to meet the points actually decided by the courts of the Second circuit.

Upon the complainant's brief, it is suggested that the order for a preliminary injunction can be granted upon terms which will impose no hardship or unnecessary damage upon the defendant, its employés, or the public. To such an injunction, with special terms as to the motors actually installed and in use in the defendant's factory, I am of the opinion that the complainant is entitled. Under all the circumstances, it would seem hardly necessary to make an immediate order permitting or requiring the gradual substitution of licensed for unlicensed motors. The complainant probably can be sufficiently protected as to these motors by a suitable bond, and by terms as to the speedy prosecution of the case to a final decision. The questions whether the defendant may be permitted to continue temporarily the use of the motors now installed, and, if so, upon what terms, are reserved.