JULIAN ENGINEERING CO. *v*. R. J. & C. W. FLETCHER, INC. *et al.*

*(Knoxville,* September Term, 1952.)

Opinion filed December 5, 1952.

DANNEL & FOWLER, of Loudon, GREEN, WEBB & MC-CAMPBELL, of Knoxville, and LOWITZ & LOWITZ, of Chicago, Ill., for complainant.

544

M. G. Goodwin, of Lenoir City, for defendants.

Mr. Justice Gailor delivered the opinion of the Court.

This litigation rises from a conditional sales contract by which Julian Engineering Company, an Illinois corporation, sold to the defendants a prefabricated smokehouse for $6,000. $2,000 was paid in cash when the goods were delivered and the balance of $4,000 was represented by a promissory note payable in monthly installments of $167 each. The cash payment of $2,000 was made as agreed, but the balance was unpaid at the time of the filing of the bill.

By the bill the complainant does not seek any money judgment, but carefully limits its prayer for relief to an adjudication of its right to possession of the subject matter of the contract of conditional sale. The action is not in replevin but in detinue. The complainant did not seek possession contemporaneously with the filing of the bill, but sought an adjudication of the merits of its right to possession under the conditional sales contract and its default, and a decree awarding possession after its right to possession had been determinated.

After the names and status of the defendants had been corrected by plea in abatement, the defendants filed answers. After certain affirmative defenses, which we consider hereafter, had been stricken by the Chancellor from these answers on motion, a final hearing was had on bill and answer, the Chancellor decreed the complainant's right to possession, and awarded it a writ to make the decree effective.

The affirmative defenses sought to be raised by the defendants are the basis for the assignments of error made to support the appeal. They are (1) that the Chancellor erred in refusing to permit the defendants to plead and prove matters in recoupment or set-off on account of complainant's breach of warranties in connection with the fitness and suitability of the smoke-house and its accessories. (2) That the Chancellor erred in decreeing repossession of the smoke-house and accessories as personal property, since it was within the contemplation of the parties at the time of the contract of sale, that the smoke-house should be attached to the realty and so lose its character as personal property, and its liability to be repossessed as such. (3) That the Chancellor erred in allowing the L. C. Spiehs Company, Inc., a foreign corporation, to intervene in the cause and become a party complainant as an assignee of the Julian Engineering Company, the original complainant.

The Chancellor gave studious and careful consideration to the points of the litigation as they arose, and in the course of the proceedings in the Chancery Court, wrote three opinions which have come up with the record and are of material assistance to us in a determination of the rights involved.

As to the right of recoupment or set-off, under Tennessee law, we think the Chancellor was clearly correct in holding that in an action which sought possession of personal property only, no counterclaim could be made for damages. The complainant sought possession of the smoke-house, and the defendants sought to offset this right to possession by a claim for a sum of money.

"As to the technical set-off," it is clear that this could not be allowed, because it applies only to mutual debts. *Brady* v. *Wasson*, [53 Tenn. 131] 6 Heisk. [131] 134; *Ragsdale* v. *Buford's Ex'rs*, [4 Tenn. 192] 3 Hayw. 192; *Allen* v. *McNew*, [27 Tenn. 46] 8 Humph. [46] 57; *Turbeville* v. *Broach*, [45 Tenn. 270] 5 Cold. [270] 272.

"Can recoupment be allowed? This question may be correctly answered upon a consideration of the true nature of the legal ideas involved in the conditional sale, and also in recoupment.

"When one makes what is called a 'conditional sale' of personal property, retaining the title as security, he has the right, upon failure of the purchaser to pay the purchase money, to replevin the property, and thereby defeat the sale; in other words, by means of the replevin proceeding he enforces the condition inhering in the contract by the operation of which it was contemplated between the parties that the contract itself should be defeated upon such failure to pay the purchase money.

"All of the cases in this state in which off-sets have been allowed either in the way of pure set-offs, as by cross-debts in an amount certain, or on demands capable of being made certain, or by way of failure of consideration, or under the doctrine of

recoupment, whether in the sense in which that doctrine was understood before Act 1855-56, p. 75, c. 71 (Code 1858, Sec. 2918), or in the broader sense in which it has been since understood, as expressed in the language, 'any matter arising out of the plaintiff's demand, and for which the defendant would be entitled to recover in a cross-action'; 'any matter growing out of the original consideration of any written instrument, for which the defendant would be entitled to recover in a cross-action'—all of these cases were suits upon some form of indebtedness claimed; none of them were actions of replevin, or suits in any form for the purpose of enforcing a condition of a defeasible contract as a means of defeating the contract itself.

"* * * Yet we think the fundamental idea involved in all offsets and recoupments is that they are brought forward by a defendant in opposition to some money demand asserted by the plaintiff. In these actions it is contemplated that the plaintiff's demand shall be abated or lessened by that of the defendant. But how can this be, when the two actions proceed on wholly different lines, the plaintiff, by a possessory action, demanding the possession of certain property, and the defendant demanding damages by reason of the breach of a contract concerning that property?

\* \* \* \* \* \* \*

"At this point is where the ambiguity, if there is any, lies. The expressions, 'arising out of the plaintiff's demand,' and 'any matter growing out of the original consideration of any written instrument,' do not mean all rights that may be asserted,

of whatsoever nature, by either party, to the prop-. erty, or concerning the property, which was the subject of the dealing of the parties. In the first expression quoted the word 'demand' means the assertion of a right to recover a sum of money from the defendant. Upon such demand being put forward, the defendant may meet it by the assertion of a cross-claim for the recovery of money against the plaintiff, or for the abatement of his demand by reason of any matter growing out of that demand, and for such purpose may show that the consideration has failed; that there was fraud or misrepresentation in the transaction, whereby the defendant was damaged (*McLean* v. *Houston,* [42 Tenn. 37] 2 Heisk. 37; *Hogg* v. *Cardwell,* [36 Tenn. 151] 4 Sneed [151] 158); or that by reason of the failure of the plaintiff to carry out his contract the defendant has suffered some injury reasonably within the contemplation of the parties when the contract was made *(Porter* v. *Woods,* [22 Tenn. 56] 3 Humph. 56, 39 Am. Dec. 153; *Whitaker* v. *Pullin,* [22 Tenn. 466] 3 Humph. [466] 467; *Pettee* v. *Tennessee Mfg. Co.,* [33 Tenn. 381] 1 Sneed [381] 385; *Overton* v. *Phelan,* [39 Tenn. 445] 2 Head [445] 446, 447). Substantially the same ideas are conveyed by the word 'consideration' in the second passage quoted.

"The foregoing propositions being sound, it follows as a necessary consequence that there could be no offset or recoupment allowed in the present case, under the form of the plaintiff's action, and hence that there was no error in the refusal of the circuit judge to admit the testimony offered." *Blair* v. *A.*

*Johnson & Sons,* 111 Tenn. 111, 115-116-117-118-119, 76 S. W. 912, 913.

It will be observed that the rule made in *Blair* v. *Johnson & Sons,* supra, is not limited to replevin actions technically, but to any "possessory action", 111 Tenn. at page 117, 76 S. W. 912, so in a later case in which *Blair* v. *Johnson & Sons* was affirmed and approved, though the action was in replevin, Judge Green described the rule as applying to an action "by a conditional vendor to recover from a conditional vendee possession of certain machinery [etc.]" *Saranac Machine Co.* v. *Nants & Co.,* 164 Tenn. 457, 458-459, 51 S. W. (2d) 479.

As to the second question whether the smoke-house and its accessories, after being attached to realty, lost their identity as personal property and became fixtures, we have found no Tennessee case which furnishes precise authority. We have a number of decisions which are relevant, but where the question presented was as to the rights of third parties, mortgagees or innocent purchasers, undertaking to set up rights against the conditional vendor of the personalty.

■■ The following rule is supported by a wealth of authority from other jurisdictions:

"Where articles are sold on the condition that the title shall not pass until they are paid for, or until some other condition is fulfilled, their annexation to the realty of the purchaser does not render them a part of the realty and irremovable, but an agreement preserving the character of the articles as personalty or reserving the right of removal thereof is implied * * *." 36 C. J. S., Fixtures, Sec. 14, p. 921; *In re Voight-Pros't Brewing Co.,* 6 Cir., 115 F. 733; *M. P. Moller, Inc.,* v. *Wilson,* 8 Cal (2d) 31,

63 P. (2d) 818; *Swift Lumber & Fuel Co.* v. *Elwanger,* 127 Neb. 740, 256 N. W. 875; *Manufacturers' Building & Loan Ass'n* v. *Public Service Elec. Co.,* 106 N. J. Eq. 68, 150 A. 196; *Edw. Ermold Co.* v. *Chemical Bank & Trust Co.,* City Ct., 14 N. Y. S. (2d) 424; *Standard Motors Finance Co.* v. *Weaver,* 199 N. C. 178, 153 S. E. 861; *Liddell Co.* v. *Cork,* 120 S. C. 481, 113 S. E. 327, 23 A. L. R. 800; *King* v. *Blickfeldt,* 111 Wash. 508, 191 P. 748.

In *Bank & Trust Co.* v. *Fred W. Wolf Co.,* 114 Tenn. 255, 86 S. W. 310, the suit was between a subsequent mortgagee who had no notice of a conditional contract of sale of certain machinery affixed to the realty, against the conditional vendor. It was held that the mortgagee should prevail but this Court said, in the course of its opinion:

"* * * we think it cannot be doubted that the purpose of the ice company in placing the machinery in the building was to permanently enhance the value of the property and to make it a part of the realty. It is equally clear that this purpose was concurred in by the seller of the machinery, subject only to the condition *that such seller should have a right to withdraw it in case the purchase money notes should not be paid.*" (Our emphasis.) *Bank & Trust Co.* v. *Fred W. Wolf Co.,* 114 Tenn. 255, 265-266, 86 S. W. 310, 312.

In *Savage & Co.* v. *Mayfield,* 157 Tenn. 676, 11 S. W. (2d) 855, the suit was between the conditional vendor of certain machinery which was affixed to the realty, and a subsequent innocent purchaser without notice. The Wolf case, supra, was affirmed, and the foregoing excerpt from the opinion was quoted and approved. We agree

with the Chancellor that this statement in the Wolfe case has become more than dictum, and is an evidence that the Tennessee Supreme Court has allied itself with those Courts of other jurisdictions which support the rule stated above.

As to the third proposition that the Chancellor erred in permitting L. C. Spiehs Company, Inc., to intervene as an assignee of the original complainant, Julian Engineering Company, L. C. Spiehs Company, Inc., claims as assignee only, and has and claims no greater or other rights than those which the Julian Engineering Company had to assign. The original bill in this cause was filed March 1, 1951. The assignment, which is made a part of the intervening petition and exhibited with it, is dated November 20, 1951. Since the decree of the Chancery Court is for possession only, the original complainant, Julian Engineering Company, takes possession of the subject matter of the conditional sales contract for the use and benefit of its assignee, L. C. Spiehs Company, Inc. The rights of the assignor and assignee are affected by the assignment, but no rights of the defendants in the subject matter are affected by it. It follows that the defendants' rights were not affected by the intervention, and since they were not prejudiced by it, there is no merit in that assignment of error.

Finally, motion is made by complainant to dismiss the appeal for failure to give appeal bond in a proper amount. Bond was made in the sum of $250 to secure the costs. By the motion, it is insisted that Code Sec. 9043 applies, and that bond should have been given on condition of the payment of "the whole debt, damages and costs."

Since the complainant, in conduct of the litigation below, was very careful to avoid establishing the amount of the "whole debt," and since, as stated, there was no decree for a sum certain in money, the complainant, in his motion, makes no estimate of what the amount of the bond should have been.

The exact language of Section 9043, upon which the motion is predicated, is:

"In actions founded on * * * bonds or written obligations for the delivery of the specific articles".

Under the facts brought out in the Chancery Court, it is by no means established that because the note sued on was for $4,000, that the whole debt of the defendant to the complainant is in that amount. Furthermore, the promissory note was for the payment of a sum certain in money, and it was not a "bond or written obligation for the delivery of *the* specific articles" in the sense of the statute. The "the" before "specific articles" is an unexplained interpolation of the codifiers of 1932, and does not occur in the original Act, nor in the Code of 1858, Sec. 3162.

In determining what the language "bonds or written obligations for the delivery of specific articles" means, the rule of noscitur a sociis, *Scopes* v. *State*, 154 Tenn. 105, 110, 289 S. W. 363, 53 A. L. R. 821, applies, and since all other appeals upon which the bond must be in the amount of "the whole debt, damages and costs," are from decrees or judgments for the payment of specific sums of money, we must hold that that is the effect of the language under consideration. Such was its construction in an early case where the opinion was written by Judge Sneed in 1877:

"But it is said that this decision may have been based upon the words of the statute which includes in its provisions 'bonds or written obligations for the delivery of specific articles.' We apprehend that these words refer to what are known as property contracts, where the liability of the obligor *is absolutely fixed to pay the estimated value* of the specific articles upon a breach of the condition of the bond." *Little* v. *State,* 68 Tenn. 573, 575. (Our emphasis.)

The motion to dismiss the appeal is overruled, the decree of the Chancellor is in all respects affirmed at appellant's cost.