# ALLIE NEWPORT MARLOWE v. FIRST STATE BANK OF JACKSBORO—371 S. W. (2d) 826.

Eastern Section. September 12, 1962.

Certiorari Denied by Supreme Court February 7, 1963.

Ladd & Qualls, Harriman, for plaintiff in error.

Harry B. Brown, Jellico, Chester Coker, LaFollette, for defendant in error.

COOPER, J. The plaintiff Allie Newport Marlowe brought this suit seeking to recover $3,360.00 deposited in a savings account with the defendant bank. The defendant admitted the existence of the account, but denied being indebted to the plaintiff. The defendant averred that the deposit in question was the proceeds from four U. S. government bonds wrongfully redeemed by the plaintiff through the defendant bank; that the defendant had had to re-imburse the Bureau of Public Debt for the payment of the bonds, and was entitled to set-off this payment against the claim of the plaintiff.

After hearing proof without the intervention of a jury, the trial judge awarded the plaintiff a judgment for $3,360.00 plus interest in the amount of $95.76, and awarded the defendant a judgment against the plaintiff ''as for set off or counter claim the sum of $3,360.00 to be credited on or applied to the judgment of the plaintiff.'' The Court further found that the plaintiff's travel expenses incident to taking her discovery deposition should be borne by the plaintiff and that the defendant should recover the $50.00 advanced plaintiff by the de-

fendant under a stipulation which provided for re-payment in the event the Court found the plaintiff should bear the expense.

The plaintiff perfected a limited appeal, appealing only from the judgment awarded the defendant. There was no appeal by the defendant.

The plaintiff filed numerous assignments of error directed to (1) the Court's finding of fact; (2) the defendant's pleadings, and (3) the Court's holding that the plaintiff had to pay travel expenses incident to giving her pre-trial deposition.

First considering those assignments directed to the trial judge's findings of fact, we are of the opinion that the evidence supports the findings of the trial judge rather than preponderates against them as insisted by plaintiff. T.C.A. sec. 27-303.

The record reveals that the savings account in question was opened on March 6, 1958 by John Marlow, and that on that date he withdrew $6,902.50 from a savings account in the name of "John Marlow or Zada Marlow", and deposited the funds in the account of "John Marlow or Allie Newport." The exact relationship between John Marlow and Allie Newport at the time the savings account was opened is not clear from the evidence; however, John Marlow and Allie Newport were married on April 7, 1959, approximately one year after the account was opened.

On March 13, 1958, the plaintiff gave John Marlow $1500.00 for deposit in the account. Marlow, on that date, also redeemed four United States Savings Bonds through the defendant bank in the total amount of $3,360.00, and

placed the proceeds in the newly opened "John Marlow or Allie Newport" savings account. These bonds were payable to "Zada Marlow (John's wife) POD John Marlow". The letters "POD" meant payable on death. The bonds bore the genuinely endorsed signature of Zada Marlow, and when it was recognized by the defendant's cashier, the bonds were redeemed even though the registered owner, Zada Marlow, was living and was not personally presenting the bonds for payment as was required by Sec. 321.7 of Treasury Department Circular No. 750.

The plaintiff accompanied Marlow to the bank, and waited in the automobile while Marlow cashed the bonds and made the deposit. Plaintiff took possession of the bank book on Marlow's return to the automobile, and kept it in her possession at all times, except the instances when she accompanied Marlow to the bank and permitted him to have the bank book to withdraw funds.

Within the month, the defendant sent the bonds to the Federal Reserve Bank, Atlanta, Georgia, as fiscal agent of the U. S. Treasury Department, for collection. The bank received credit for $3,360.00, the amount paid on redemption of the bonds.

The defendant bank learned, on November 28, 1958, that a federal agency was conducting an investigation of the legality of John Marlow cashing the bonds, but no official demand was made at the time by the U. S. Treasury Department for re-imbursement of the funds credited to the defendant in payment of the bonds.

The defendant bank continued to pay to John Marlow the interest on the total amount on deposit, including the funds from the bonds, through January 2, 1960. On

that date, Marlow attempted to close out the account. The defendant bank permitted the withdrawal of $6,765.00, but refused to pay the remaining $3,360.00, explaining that there was a question of whether or not John Marlow was entitled to the proceeds from the bonds. The money withdrawn by Marlow was used by both Marlow and the plaintiff as they desired.

On May 19, 1960, the defendant, on demand of the U. S. Treasury Department, paid the Bureau of Public Debt $3,360.00 and charged the payment against the "John Marlow or Allie Newport" account.

On June 4, 1960, John Marlow assigned his interest in the account to the plaintiff with the statement "if you can get it you can have it." It was conceded by plaintiff that no consideration was given for the assignment, and that the assignment was made on the advice of counsel.

August 31, 1960, the United States paid Zada Marlow, the registered owner of the bonds in question, $3,360.00, the March 13, 1958, redemption value of the bonds, plus interest thereon.

The trial judge found, and we think properly so, that the plaintiff was familiar with the "John Marlow or Allie Newport" account from its inception; that she was aware of the irregularity of the bond redemption and the deposit of the proceeds in the account; and that while it was John Marlow who conducted the business with the bank, he was acting for plaintiff as well as himself and she was chargeable with his knowledge of the developments and transactions in respect to the account.

In her brief and argument, plaintiff insists that the claim of the defendant was not a proper claim to be

established under a plea of set-off or recoupment as there was no mutuality, the claim was unliquidated and was in tort, referring us to numerous cases listed in Michie's Digest, Vol. 14, Sec. 11(1) and Sec. 12, and to the general annotations to T.C.A. sec. 20-1001.

Even though the cases relied on by plaintiff were only cited generally, we have considered them and are of the opinion that the claim of defendant probably was cognizable under T.C.A. sec. 20-1001; however, a decision on that issue would not be controlling in the present case in view of the provisions of T.C.A. sec. 20-1008, and the proof showing that the plaintiff was a resident of Dayton, Ohio at the time she filed this action and the defendant filed its plea of set-off. See Sliger v. Parks, 196 Tenn. 676, 270 S. W. (2d) 319.

T.C.A. sec. 20-1008 provides that:

"In actions or suits in which a resident of another state and a resident of this state are adversary parties, *every claim or demand* against the suing parties, or any of them, whether liquidated or unliquidated, sounding in tort or contract, express or implied, or whether arising in the same or a different transaction, *may be set up by plea of setoff, or* as counterclaim by counter declaration * * *."

In Sliger v. Parks, supra, the Supreme Court quoted from the opinion of this Court as follows:

"At the time of the institution of the suit in question, the plaintiff had become a non-resident of the state. This was not known to defendants. But unknown to them they had a right to invoke the provisions of Code Sec. 8746 (T.C.A. sec. 20-1008),

supra. By a parity of reasoning, the plaintiff, who knew of his non-residence, had no right to insist upon the provisions of the law relating only to residents.''

 In light of the above quoted statute, and cited authority, we are of the opinion that the trial judge properly gave the defendant the opportunity to present the defenses set up in his plea of set-off, and, under the above proof, correctly entered a judgment for the defendant.

In view of the strong reliance placed by the plaintiff on the case of Julian Engineering Co. v. R. J. & C. W. Fletcher, Inc., 194 Tenn. 542, 253 S. W. (2d) 743 as authority for the necessity of mutuality, and a discussion of the right of set-off and the relief that could be granted under a claim of recoupment, it should be noted that T.C.A. sec. 20-1008 was not applicable to Chancery actions until the 1953 amendment to the Act. The Julian case was decided prior to passage of the Amendment and, of course, T.C.A. sec. 20-1008 was not considered by the Court.

Plaintiff's final assignment of error presents the question of whether a defendant, desiring to take the plaintiff's deposition for purposes of discovery, is required to pay the plaintiff's travel expenses from her home to the situs of the forum where the deposition is to be taken. This issue has not been decided in a reported case in this State; however, there are numerous decisions by the Federal Courts construing provisions of the Federal Rules of Civil Procedure which are identical to those in T.C.A. sec. 24-1201 et seq. See Rule 26, 30(b), (d), and 31(d) of the Federal Rules of Civil Procedure.

The general rule announced by these cases is that in the absence of exceptional circumstances, a plaintiff must make himself available for oral examination at the situs of the forum. Hyam v. American Export Lines, Inc. (2nd Cir.), 213 F. (2d) 221; Irwin Co. v. Tide Publishing Co., D.C., 13 F.R.D. 18; Morrison Export Co. Ltd. v. Goldstone, D.C., 12 F.R.D. 258; Sullivan v. So. Pac. Co., D.C., 7 F.R.D. 206; Montgomery v. Sheldon, D.C. 16 F.R.D. 34.

Where an oral examination at the situs of the forum imposes an undue burden upon the plaintiff or causes undue hardship, the plaintiff can make application, by petition to the trial judge, that a noticed deposition ''not be taken, or that it * * * be taken only at some designated place other than that stated in the notice, or that it may be taken only on written interrogatories * * * or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression * * *.'' T.C.A. sec. 24-1205. Where such application is made, the trial judge, in the exercise of his sound judicial discretion, must weigh the defendant's preference for an oral examination at the situs of the forum against his actual need for such an examination and against the resulting burden to his opponent.

''Where these considerations are in serious conflict, the judge after weighing the impact of his ruling on the parties may order the deposition to be taken, if not at the forum, at an appropriate distant place under terms whereby the reasonable expense thereof may ultimately be reflected in the taxable costs, or may order that the depositions be taken, at least in the first instance, only

on written interrogatories." Hyam v. American Export Lines, supra. See also Sullivan v. So. Pac. Co., supra; Taejon Bristle Mfg. Co., Ltd. v. Omnex Corp., D.C., 13 F.R.D. 448; 70 A.L.R. (2d) 685 et seq.

 In the present case no special or exceptional circumstance was plead, or shown, which would indicate that the expense of travel from the plaintiff's home in Dayton, Ohio to the situs of the forum would impose any undue burden upon the plaintiff or cause her undue hardship. In the absence of such a showing, the trial judge, in our opinion, correctly ruled that the plaintiff was to pay such travel expenses.

Having found no error, the judgment of the trial judge is affirmed. Costs of the appeal are adjudged against plaintiff and her sureties.

Hale, J., concurs.

McAmis, P. J., not participating.