**STATE of Missouri, Respondent,**

v.

**Michael MURPHY, Appellant.**

**No. 61475.**

Supreme Court of Missouri, en banc.

Dec. 6, 1979.

Rehearing Denied Jan. 15, 1980.

David Robards, Public Defender, Joplin, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, III, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Michael Murphy, charged with capital murder, § 559.005, Laws 1975, was convicted by a jury of murder in the second degree, § 559.020, RSMo 1969; and the jury fixed his punishment at life imprisonment. Judgment was entered accordingly March 7, 1979. Appellant questions the court's actions with respect to admission of the murder weapon, defendant's relationship with his girlfriend, and prior recorded testimony; the State's closing argument, and the instruction on justifiable homicide. He also charges ineffective assistance of counsel. Affirmed.

Appellant does not question the sufficiency of evidence to sustain the conviction; and he states evidence which would permit a jury to find:

In the early morning hours of April 10, 1977, Michael Murphy and Judy Bush, his girlfriend, were at the Ruff House bar in Joplin, Missouri. About 1:30 a. m. they left the bar and went to Murphy's automobile parked on the east side of the building. After they got into the car they saw Clinton Tubbs, a/k/a "Taco" walking toward a van parked on the west side of the building. Judy Bush began shouting insults at Taco, calling him a nigger. Taco approached the car and asked if he was the nigger they were talking about. Murphy then drove his car through the parking lot and turned west on the street. As Taco returned to his van, Murphy turned back into the parking lot on the west side of the building, stopped his car about eighty feet from the van, got out of his car, and stood behind the open door with a pistol in his hand. Taco and three companions walked toward defendant's car. Two of the companions walked around the rear of the car to exchange words with Judy Bush. Taco and Bobby Vickers walked slowly toward defendant. Taco stopped about five or six feet from

defendant and the two continued to exchange words. Vickers twice attempted to get between them; both times Taco pushed him away. Defendant then shot Taco in the stomach at a range of less than two feet with a .357 magnum pistol. At the time the shot was fired, Taco had his hands at his side; he did not threaten or attempt to strike Murphy, and no person or other obstruction prevented Murphy from leaving the scene in avoidance of the confrontation.

Defendant's version was that Judy Bush was the only one to insult Taco; the defendant had tried to prevent her doing so; that a man stood in front of his car blocking his way; that when Taco came toward defendant he did not stop five or six feet away but walked up and poked defendant in the nose with his finger and struck him in the head causing him to fall back against the car, resulting in the pistol's accidental discharge. Defendant said he carried the pistol for self-protection because he had previously suffered severe head injuries in a motorcycle accident, later aggravated in a bar fight, and was afraid that if he were hit in the head he would be killed. He introduced medical records of this injury.

Appellant charges the court abused its discretion in receiving the murder weapon into evidence. He argues that because defense counsel had stipulated that this weapon belonged to defendant and that a bullet from it had entered the victim's body, the gun itself was rendered irrelevant to any material issue in the case, and that because the gun, a .357 magnum, was so large, its viewing by the jury was inflammatory.

■ Demonstrative evidence is admissible if it throws any relevant light upon a material matter at issue and its admission is a matter resting within the discretion accorded the trial judge. *State v. McRoberts*, 485 S.W.2d 70 (Mo.1972). If relevant, such evidence should not be rejected because it also tends to arouse prejudice in the jury. *State v. Swenson*, 551 S.W.2d 917 (Mo.App. 1977). In this case the gun was relevant in that it negated defendant's contentions that he was a peaceful, nonaggressive man; that

the gun's discharge was accidental; and that defendant lacked the requisite intent.

Appellant charges the court abused its discretion in requiring defendant to disclose on cross-examination that he had been sleeping in the same bed with Judy Bush. He contends such was irrelevant, highly inflammatory in that it showed defendant guilty of adultery, and prejudiced his right to a fair trial.

■■■■ A defendant who elects to testify in his own behalf may be contradicted and impeached as any other witness. § 546.260 RSMo, *State v. Roberson*, 548 S.W.2d 280 (Mo.App.1977). In the cross-examination of a defendant who testifies in his own behalf the prosecution is not confined to categorical review of the evidence given by defendant on direct examination but may examine him in detail as to matters generally referred to in his examination in chief. *State v. Gish*, 376 S.W.2d 618 (Mo.App.1964). Thus, if in direct examination defendant refers in a general way to a subject, he may then be cross-examined in detail on that subject. *State v. Dalton*, 433 S.W.2d 562 (Mo.1968). Defendant testified on direct examination that he lived with Judy Bush and that he and she were not married. To that, cross-examination added only that they slept in the same bed, a fact the jury likely had inferred from direct examination. Such questioning was within the scope and cumulative of matters brought into the case by defendant upon his examination in chief. *See, State v. Burchett*, 302 S.W.2d 9, 18–19 (Mo.1957); *State v. Johnson*, 586 S.W.2d 437, 442 (Mo.App.1979).

Appellant charges the court erred in permitting the State to introduce the prior recorded testimony of two witnesses found to be unavailable at the time of trial. He asserts the State did not show due diligence in its attempt to secure presence of the witnesses.

■■■■ The right of confrontation and cross-examination is an essential and fundamental requirement for a fair trial. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Mo. Const. art. I § 18(a)

cl. 3. An exception exists where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by the defendant. A witness is not unavailable unless the prosecutor has made a good-faith effort to obtain his presence at trial; *State v. Brookins*, 478 S.W.2d 372 (Mo.1972); and the State must show the exercise of reasonable diligence to secure attendance of the witness at trial. *State v. Purl*, 183 S.W.2d 903 (Mo.1944). What constitutes due diligence turns on the facts of the particular case. *State v. Lloyd*, 337 Mo. 990, 87 S.W.2d 418 (1935).

■■■■ The court's ruling comported with the foregoing on the showing made in this case. Upon first trial of defendant, which ended in a mistrial, the State called Danny Patrum and Louis Casper Briant, III. The State had no reason to anticipate difficulty in recalling them for the second trial because Patrum had held a steady job and Briant had been around Joplin for several years. Approximately two weeks before the case was to be retried the State issued subpoenas for Patrum and Briant which were returned *non est*. Thereafter, the prosecutor sent an investigator to locate them, and he learned that one was in Colorado and the other "somewhere in the South." The testimony in question was given at a former trial of the same man for the same offense. It was not, as in many of the cases where the transcript has been held inadmissible, testimony from a preliminary hearing where the cross-examination was perfunctory at best or waived altogether. *See, e. g., State v. Deyo*, 358 S.W.2d 816 (Mo.1962); *State v. Lloyd*, 87 S.W.2d 418 (Mo.1935). In this case both witnesses had been subjected to full cross-examination; and the substance of the testimony was cumulative in nature. Each testified to the occurrence as did five other witnesses for the State, Judy Bush, Greg Watts, Bobby Vickers, David Vickers, and Larry Aggus. The testimony of Patrum and Briant covered less than 15 pages of the 450 pages of transcript, and served to corroborate the other State's witnesses. Counsel succeeded at this trial in excluding some of the transcript testimony.

■ Appellant charges the court with several instances of "plain error" in connection with the State's closing argument. Before review of these matters it is appropriate to note that Rule 27.20(c) permits consideration of "plain errors" affecting substantive rights when they result in manifest injustice or miscarriage of justice. The rule does not cover all trial error, should be exercised sparingly, cannot be used as a vehicle for review of every alleged trial error which is not asserted or preserved for review, and is limited in its application to cases where there is a manifestation and showing that injustice or miscarriage of justice results if the rule is not invoked. Ordinarily, alleged errors on closing argument do not justify relief under this standard unless they are determined to have a decisive effect on the jury. *State v. Davis*, 566 S.W.2d 437, 446–447 (Mo. banc 1978).

■ Appellant's first such charge stems from two excerpts of the State's closing argument:

"I suggest to you the proper and correct punishment in this case . . . That you impose punishment of life imprisonment and allow the other authorities, if they decide to let Mr. Murphy go before the end of that term."

". . . it's like I said if someone else determines at a later point he ought to be let out and been able to study him a little more than we have, we are not going to disagree with that."

Citing *State v. Lewis*, 443 S.W.2d 186 (Mo. 1969), appellant argues that the effect of the remarks was to influence the jurors to shift the burden of their responsibility to fix punishment to parole authorities. In *State v. Lewis*, plain error was found where the prosecutor made offensive remarks which constituted the bulk of his closing argument and included an extended explanation of the functions and operations of the Parole Board. By contrast, the remarks in this case were short and but a small part of the closing statement. Matters of closing argument rest in the discretion of the trial court. *State v. Sallee*, 436 S.W.2d 246 (Mo.1969). Defense counsel saw fit to make no objection; the trial judge viewed the closing argument and was in the best position to assess the impact it had on the jury; and it is not demonstrated that the comment had a decisive effect on the jury.

Appellant's next such charge stems from the prosecutor's reading, during closing argument, of portions of defendant's medical records previously introduced into evidence by defense counsel.

■ An attorney should not argue matters not in the evidence. *State v. Cuckovich*, 485 S.W.2d 16 (Mo. banc 1972). It is the duty of the prosecuting attorney to confine himself to the facts and evidence and to the fair deductions to be drawn therefrom. *State v. Dixon*, 253 S.W.2d 746 (Mo.1923). The prosecutor's argument in this instance related to matters shown to be in evidence.

As his next assertion of plain error in connection with the argument, appellant charges the trial court permitted the State in closing argument to accuse defendant and his counsel of creating false evidence and of putting on certain evidence solely to confuse the jury. The charge arises in this context:

Dr. Phillip R. Whittle of the local crime laboratory was called by the defense to testify, based upon his experiments with two bullets seized with the murder weapon, regarding gunshot residue levels on Taco's clothing as compared to levels after firing the two bullets from different distances. Cross-examination revealed that two other bullets, supplied by defendant's attorney, made less noise when fired than the two seized with the gun. Based on this, the prosecutor, in the first half of his closing argument, argued the defense tried to rig the experiment by underloading the shells. Defense counsel argued that the prosecutor knew this to be untrue and challenged him to explain that to the jury. Rising to the challenge, the prosecutor said he was not accusing defense counsel of anything and argued that the tampering could have been done by defendant through some other attorney.

The testimony of the expert witness was elicited by defendant to show that the distance between the victim and the gun at discharge was less than two feet. The prosecutor's remarks could not have caused jury prejudice with regard to the substance of the expert's testimony because there was an abundance of testimony that defendant fired the shot from that range.

■ Appellant claims, however, that the real damage was to his integrity in the eyes of the jury and reversible for that reason. The prosecutor's comment about possible tampering was a conclusion or inference based upon the cross-examination testimony already in evidence without objection. The prosecutor has a right to comment in final argument on conflicting evidence and the credibility of defendant's witnesses and the truth or falsity, from the State's point of view of their testimony. *State v. Barron*, 465 S.W.2d 523 (Mo.1971). Whether the prosecutor has exceeded the leeway granted him in such comment is a matter peculiarly within the sound discretion of the trial court. *State v. Taylor*, 567 S.W.2d 705 (Mo. App.1978). That defendant's credibility in the eyes of the jury may have been impugned on the basis of the prosecutor's remarks, made partly in response to a challenge by defense counsel and based upon evidence in this record, does not rise to the level of plain error to warrant reversal under Rule 27.20(c).

■ Appellant's final charge of plain error affecting the argument is that the prosecutor in closing argument accused defendant and defense counsel of fabricating a defense. He describes the prosecutor's closing as "an open, bitter, brutal and unjustified personal attack on defense counsel and their methods" all calculated to inflame the jury, yet defense counsel so accused saw fit to let the matter stand without objection. Under the standards of *State v. Barron*, supra, and *State v. Davis*, supra, appellant has not demonstrated that these comments had a decisive effect on the jury and no miscarriage can be said to occur failing application of the plain error rule. *State v. Taylor*, supra.

Appellant also charges plain error in the omission of form paragraph three on attempted withdrawal in the instruction on justifiable homicide.

MAI–Cr 2.40, Justifiable Homicide or Use of Force in Assault Cases, is a required instruction irrespective of request. Its Notes on Use specify that paragraphs 1 and 2 and the first sentence in paragraph 4 must be included in every self-defense instruction in homicide cases; but the inclusion or omission of paragraph 3 depends upon the evidence in each particular case. Paragraph 3 reads:

"Even if the defendant provokes the use or threat of force against himself, nevertheless if he in good faith withdrew or attempted to withdraw from the difficulty and clearly indicated to [name of victim] that he desired to withdraw and end the use of force, and if [name of victim] then began, continued or resumed the use or threat of force on his part, and if the defendant at that time had reasonable cause to believe and did believe that he was in immediate danger of death or serious bodily harm and had reasonable cause to believe and did believe that it was necessary for him to act as he did to protect himself from such danger, then you are instructed that he acted in lawful self-defense and must be acquitted."

Appellant argues that the failure of the trial court to include this paragraph deprived him of the right to have the jury determine from the facts in the case whether he did make a good faith effort to withdraw.

■ Appellant concedes that plain error does not result in connection with instructions unless the court has so misdirected or failed to instruct the jury on the law of the case as to cause manifest injustice. *See State v. Tilley*, 569 S.W.2d 346 (Mo.App.1978). It is clear in the circumstances of this case that no such injustice has resulted. Following the initial confrontation in the alley on the east side of the bar, defendant and Judy Bush drove out onto the street. Instead of leaving the scene, however, defendant drove his car

onto the lot on the west side of the building where the victim's van was parked. He got out of his car, brandished the gun, and held that position until he shot the victim. His car was not blocked. He then got into his car and drove away until stopped by the police. His case concentrated on accidental discharge of the gun rather than withdrawal from a confrontation or defense of person. Faced with these facts the trial court did not commit plain error in failing to include in the approved instruction the paragraph dealing with attempted withdrawal by defendant.

Finally, appellant charges deprivation of his right to effective assistance of counsel "in that defense counsel introduced defendant's medical records on the issue of seizures, which issue was not involved in the case, and which records destroyed the defense evidence relating to the defendant's character, introduced evidence of the defendant's mental peculiarities and heroin addiction which was brought to the jury's attention by the prosecutor in such a manner as to give substance to the prosecutor's claim that the defense was, in effect, a thinly woven web of fabrications."

Defendant's medical records showed, *inter alia*, a past skull fracture suffered by defendant, his susceptibility to seizures, the time he spent in the hospital, release dates, and his drug addiction. Appellant claims that his counsel could have had no rational reason to introduce the total record and that doing so provided the prosecution with material to undercut the defense of the case. He asserts that defense counsel must not have fully read the records he introduced and such an omission necessarily reflects a failure to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances as required by *Seales v. State*, 580 S.W.2d 733 (Mo. banc 1979).

Ordinarily, claims of ineffective assistance of counsel are better raised and considered in proceedings directed to that purpose under Rule 27.26. *State v. Blackwell*, 459 S.W.2d 268 (Mo. banc 1970). However, such a contention may be raised on direct appeal, *State v. Cluck*, 451 S.W.2d 103 (Mo.1970); and will be considered on direct appeal as a matter of plain error if the allegations arise from isolated instances and the record as to each of them is fully developed. *State v. Lindley*, 545 S.W.2d 669 (Mo.App.1976).

The record is sufficiently developed in this case to review appellant's allegation; and it shows that defense counsel's decision to introduce the medical records was a matter of trial strategy. There is no proof beyond appellant's assertion that trial counsel failed to read the medical records. They were offered to show defendant's prior head injury thus establishing a basis on which defense counsel could argue defendant's fear of attack. Evidence of defendant's susceptibility to seizures would tend to invoke jury sympathy. That the prosecution succeeded in using other portions of defendant's records to attack the defense does not establish that this tactical decision amounted to a lack of the customary skill and diligence required of counsel.

Judgment affirmed.

All concur.