STATE of Missouri, Respondent,

v.

Delbert Clarence MILLER, Jr., Appellant.

No. 64469.

Supreme Court of Missouri, En Banc.

May 31, 1983.

David L. Steelman, Salem, for appellant.

John Ashcroft, Atty. Gen., Carl S. Yendes, Asst. Atty. Gen., Kansas City, for respondent.

DONNELLY, Judge.

This case was transferred to this Court on certification by a dissenting judge from an opinion by the Court of Appeals, Western District. Mo. Const., art. V, § 10. The defendant, Delbert Miller, had been convicted upon jury trial of stealing by deceit, §§ 560.156 and 560.161, RSMo 1978, and sentenced to seven years' imprisonment. The Court of Appeals reversed the conviction and remanded for a new trial. In his dissent, Judge Donald L. Manford certified that he deemed such opinion to be contrary to State v. Degraffenreid, 477 S.W.2d 57 (Mo. banc 1972).

Defendant Miller, together with Harold Stufflebean and Golder Copas, an insect exterminator, represented to Lillian Bruce that her house was infested with powder post beetles and required treatment they could supply. The house was not so infested. Rotted wood brought by the three was shown the elderly Mrs. Bruce as purported evidence of such infestation. After Mrs. Bruce agreed to pay $620.00, appellant ran a fogging machine containing diesel fuel for ten to fifteen minutes in her basement. Such treatment is ineffectual for powder post beetles. Copas assisted Mrs. Bruce in filling out a check to Harold D. Stufflebean, which Stufflebean cashed in person later that day at Mrs. Bruce's bank.

All three men were charged with the offense. Copas pled guilty and was awaiting sentencing at the time of this trial. Stufflebean was tried prior to defendant Miller, and Miller testified in his behalf. The effect of Miller's testimony in the Stufflebean trial was that he and Copas were the culprits in the scheme, but Stufflebean was not.

Among other evidence presented by the state in this case, detailed testimony was elicited from Golder Copas concerning the scheme and ensuing events; Lillian Bruce's testimony at the preliminary hearing as to her recollection of the events was read to the jury because of her illness at the time of trial; a licensed exterminator who inspected Mrs. Bruce's home after the appellant's visit at the request of the deputy sheriff testified that he found no evidence of infestation of or damage to the structure from powder post beetles; and two witnesses testified that in a conversation while waiting to testify at the trial of co-defendant Stufflebean, Miller admitted that he and not Stufflebean was guilty of the offense. In addition, the prosecutor quoted extensively from portions of the Stufflebean transcript in which Miller stated that he and Copas, and not Stufflebean, were the culprits in the fraudulent scheme. Defendant did not testify and rested without presenting any evidence.

In our view, it was error to read to the jury portions of the transcript of the Stufflebean trial in which the judge and the prosecutor repeatedly warned Miller of the danger that his testimony might be self-incriminating and of his right to invoke the

Fifth Amendment and to refuse to testify. The question on appeal is whether the error was harmless.

■ In *State v. Degraffenreid*, 477 S.W.2d 57, 64 (Mo. banc 1972) this Court stated that "error in the admission of evidence should not be declared harmless unless it is so without question." The more understandable and prevailing standard is that error can be declared harmless only if we are "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705.

The record in this case is replete with evidence of Miller's guilt. In addition to Miller's own admission of guilt in the *Stufflebean* transcript, the state presented the detailed testimony of co-defendant Golder Copas, testimony of the victim herself, a licensed exterminator's report that the Bruce home contained no damage by or evidence of powder post beetles, and testimony of witnesses who heard Miller admit to the crime.

In our view, the case against Miller was so overwhelming that we conclude that the error in admission of evidence, *supra,* was harmless beyond a reasonable doubt. "It is so overwhelming that unless we say that no [error] can constitute harmless error, we must leave this * * * conviction undisturbed." *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969).

The judgment is affirmed.

HIGGINS, GUNN, BILLINGS and BLACKMAR, JJ., concur.

WELLIVER, J., concurs in separate opinion filed.

RENDLEN, C.J., concurs in result.

WELLIVER, Judge, concurring.

I concur in the principal opinion. I write separately to emphasize my belief that the time has come for this Court to clarify what standard it intends to apply in determining whether error in a criminal trial is harmless.

In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court concluded that there may be instances in which a federal constitutional error might be considered harmless. It held, however, that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. Under that test, the "beneficiary of a constitutional error," the government, must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* The Court simply applied the level of certainty necessary for conviction of a criminal defendant, *see In re Winship*, 397 U.S. 358, 361–64, 90 S.Ct. 1068, 1070–72, 25 L.Ed.2d 368 (1970), to the determination whether a federal constitutional error is harmless. The reasonable doubt standard, the Court said, is a "workable" one because it is "familiar . . . to all courts." *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828.

Because of the high nature of federal constitutional rights, it would seem that a federal constitutional error would more grievously infringe the rights of the accused than would an error of state criminal law or procedure. It follows that the burden of demonstrating that a federal constitutional error is harmless should be the most difficult harmless error burden the government should be made to bear. Yet this Court has embraced an even more rigorous harmless error standard applicable to those cases, such as this one, in which evidence was admitted when it should have been excluded. That test, we have said, is that "error in the admission of evidence should not be declared harmless unless it is so without question." *State v. Degraffenreid*, 477 S.W.2d 57, 64 (Mo. banc 1972). This has been characterized as "for all practical purposes the same as" the reasonable doubt standard, *State v. Brown*, 549 S.W.2d 336, 345 (Mo. banc 1977), and there have also been hints that it is lower than the reasonable doubt standard, *see State v. Cook*, 628 S.W.2d 657, 662 (Mo. banc 1982) (Seiler, J., concurring); *id.* at 665 (Donnelly, C.J., dissenting). Neither, of course, is accurate. It is clear that the *Degraffenreid*

standard is higher, for the requirement that any error be harmless without question leaves no room for reasonable doubt.

It is perhaps because the *Degraffenreid* standard places an onerous burden on the state that this Court has eschewed application of it in favor of the reasonable doubt standard. For example, we have applied the reasonable doubt standard, in accordance with *Chapman,* in cases allegedly involving federal constitutional error. *E.g., State v. Bonuchi,* 636 S.W.2d 338, 341 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *State v. Johnson,* 618 S.W.2d 191, 195 (Mo.1981); *State v. Baskerville,* 616 S.W.2d 839, 844 (Mo.1981); *State v. Kent,* 515 S.W.2d 457, 460 (Mo. banc 1974); *State v. Adams,* 497 S.W.2d 147, 152 (Mo.1973); *State v. Crow,* 486 S.W.2d 248, 252 (Mo.1972); *State v. Granberry,* 484 S.W.2d 295, 300 (Mo. banc 1972). We also have applied the reasonable doubt standard in cases involving erroneous exclusion, rather than erroneous admission, of evidence. *Burton v. State,* 641 S.W.2d 95, 100 (Mo. banc 1982). *See State v. Clark,* 592 S.W.2d 709, 718–19 (Mo. banc 1979), *cert. denied,* 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 57 (1980).

More telling is our vacillation in application of the harmless error rule in cases in which *Degraffenreid* was clearly applicable because the issue involved erroneous admission of evidence as a matter of state law. In some cases we have applied the *Degraffenreid* standard. *E.g., State v. Haggard,* 619 S.W.2d 44, 48 (Mo. banc 1981), *vacated and remanded on other grounds,* —— U.S. ——, 103 S.Ct. 1171, 75 L.Ed.2d 423 (1983). In others we have applied the reasonable doubt standard instead. For example, the defendant in *State v. Wright,* 582 S.W.2d 275 (Mo. banc 1979), was convicted of first degree robbery. The dispositive issue was whether the trial court erred by admitting into evidence a wallet seized from the defendant that did not belong to the defendant, his accomplices, or the victim. The defendant argued successfully that the wallet constituted evidence of a crime with which he was not charged and that he was prejudiced by its admission. In reaching its conclusion that the error was not harmless, the Court recited the *Degraffenreid* standard, *id.* at 277, but it noted that "the burden is upon the respondent-state to show this evidence was harmless error beyond a reasonable doubt," *id.* at 278. In another case, *State v. Stephens,* 507 S.W.2d 18, 19 (Mo.1974), the Court said that any error in admission of the challenged in-court identification was harmless beyond a reasonable doubt.

The foregoing illustrates the confusion and inconsistency of application of tests for harmless error that *Degraffenreid* has spawned. I am persuaded that the *Degraffenreid* standard, even limited in application to cases in which evidence was erroneously admitted, is flawed. First, as indicated above, the *Degraffenreid* standard places a greater value on a proper application of state criminal law and procedure than is placed on rights guaranteed by the federal constitution. Second, that standard anomalously imposes upon the state a greater burden in demonstrating error to be harmless than the state must bear in proving guilt in the first instance. Third, it is unclear just when the *Degraffenreid* standard should be applied. A tension exists between the *Degraffenreid* standard and the reasonable doubt standard when the erroneous admission of evidence impinges upon a federal constitutional right. *Degraffenreid* did not involve a federal constitutional error, but nothing in the Court's language in that case limits its application to nonconstitutional cases. *Degraffenreid* should be overruled to the extent that it applies a harmless error rule more stringent than the reasonable doubt standard, which I believe should be applied in all cases.

I concur in the principal opinion because I believe that the error in this case was harmless. The evidence against appellant was overwhelming, and "error which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong." *Degraffenreid,* 477 S.W.2d at 65. The evidence of which appellant complains was cumulative. It was virtually identical to the testimony of the two witnesses, one of whom was a law enforcement officer, to whom appellant admitted his guilt in a conversation prior to his testimo-

ny in the trial of co-defendant Stufflebean. "Even observing the caution noted in *Degraffenreid,* with reference to cumulative evidence, the admission of the [testimony in the previous case] was both cumulative and harmless." *Haggard,* 619 S.W.2d at 48. On this state of the record, the error was harmless even under the erroneous *Degraffenreid* "harmless without question" standard. *A fortiori,* it was harmless beyond a reasonable doubt.

We do a disservice to the lower trial and appellate courts of this state when we fail to articulate clearly which harmless error rule we intend to apply. The principal opinion, like *Wright,* recites the *Degraffenreid* standard and then applies the reasonable doubt test. Our lower courts confront issues of harmless error much more frequently than do we, and they expect, and deserve, more guidance in this important area than we have given. The signals we send should be consistent rather than conflicting. That could be accomplished by overruling *Degraffenreid* and applying the reasonable doubt standard to all questions of harmless error.