**STATE of Missouri,
Plaintiff-Respondent,**

v.

**James McKINLEY,
Respondent-Appellant.**

No. 47952.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 2, 1984.

Motion for Rehearing and/or Transfer
Denied Nov. 1, 1984.

John H. Cassidy, III, St. Louis, for respondent-appellant.

John Ashcroft, Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Chief Judge.

Defendant appeals after a jury conviction of robbery in the first degree and a court-imposed sentence as a prior offender to seventeen years in the Missouri Department of Corrections. His sole point on appeal is:

The trial court committed plain error in not ordering a mistrial upon its own motion in that the prosecutor's comment, "The defendant has the presumption of innocence. That's not evidence like a witness who took the stand in this case and cross-examined and whose credibility and demeanor were tested in front of you. It's not proof of anything, just as defendant's failure to testify is not proof of anything," is impermissible because such comments directly violate appellant's right against self-incrimination under Amendment Five, United States Constitution, and Article I, Section 19, Missouri Constitution.[1]

---

1. We note that in his point relied on, defendant does not mention § 546.270, RSMo.1978, which states:

If the accused shall not avail himself or herself of his or her right to testify, ... it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise

Defendant neither objected to the comments at trial, nor raised the issue in his motion for new trial.

This case comes to the writer on reassignment.

The record reveals that defendant and another man entered the real estate office of eighty-seven year old Harry Ewers, Jr., around 1:30 p.m. on May 20, 1983. They asked Ewers about the possibility of employment. As Ewers handed defendant a piece of paper on which to write their names, the other man displayed a handgun. The two men took Ewers toward the back office of his business, and Ewers attempted to defend himself with a chair. The intruders took the chair from him and pushed him into the back office. Ewers' secretary, Linda Hellon, was also ordered into the back room.

Ewers' wallet, containing cash and eleven credit cards, was taken from him and his hands were tied behind his back. The man wielding the gun ordered the secretary to open the safe in the back office, but then took her to the safe in the front office. She opened it, and the man took the cash inside.

One of the men then demanded to know where the basement door was located. As he attempted to open the basement door, the secretary ran to the front door. She managed to open the door partially, but the man at the basement door reached her in time to prevent her escape by grabbing her arm and pushing the door closed. The force he used on the glass door caused it to shatter. When this occurred, both men fled the building. The secretary phoned the police.

After the police arrived at the scene, employees from two neighboring businesses contacted police. One of them, Linda Brewer, was working at the front window of a cleaning store around the time of the robbery. The store was located within view of Ewers' real estate office. She saw defendant and his accomplice sitting in a parked white automobile. After five or ten minutes, she saw them leave the car, start across Grand Avenue and then turn around and get back in the car. The two then got out of the car again, crossed Grand Avenue, and walked northward toward Ewers' office. She continued work until she noticed police at Ewers' business; at that time she also noticed the white car was gone. She then contacted police.

The other witness was J.R. Kemp, who worked as an antique dealer on the same block as Ewers' business. He noticed a white automobile with no license plates circle the block five times, and he became suspicious. He observed defendant and his accomplice as they sat in the car after it was parked, and then saw them leave the car, cross Grand Avenue, and look into his storefront window for approximately five minutes. After tending to a customer, Kemp noticed the car was gone, and then saw the police at Ewers' place of business. He then contacted the police himself.

After the police got a description of the white automobile, a police broadcast was made concerning the robbery and vehicle. A police officer heard the broadcast and observed a parked vehicle fitting the description. When a young woman left an apartment and drove away in the car, the officer stopped her and called the detectives who were investigating the robbery. The detectives had her sign a consent-to-search form for her apartment. Upon searching her apartment, detectives found defendant hiding in a closet, and his accomplice in an attic crawl space. They also found an open suitcase containing a loaded gun and clothing. After defendant was found, he called out, "Travis, come on down. It's all over. They got us." The two men were placed under arrest and taken to the police station.

A line-up was held at the station later that day. Ewers, Linda Hellon, Linda Brewer, and J.R. Kemp all identified defendant and his accomplice. Detectives also found fingerprints of the accomplice at

any presumption of guilt, *nor be referred to by any attorney in the case,* nor be considered by the court or jury before whom the trial takes place. (emphasis added).

the scene of the crime. At trial, the four identifying witnesses again identified defendant. Ewers and Hellon, the victims, testified that defendant's accomplice had a gun. Also, a police officer testified that defendant admitted the following facts to him: on the day before the robbery, a man told defendant that he knew of someone defendant could rob at a real estate office, and the man guaranteed a certain amount of money would be in the office. Defendant discussed it with his accomplice, and the next day the accomplice got a gun from the man. The man wanted Mr. Ewers' ring. Defendant also admitted he was at the scene of the crime.

■ Defendant did not testify or put on any evidence. He requested an instruction based on MAI–CR2d 3.76, which states:

Under the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify.

This instruction is given only if requested by defendant. *See* Notes on Use, MAI–CR2d 3.76.

Directly after the instructions were read to the jury (including the above instruction), the prosecuting attorney began his closing argument with the following statement:

I submit to you, your decision in this case is probably far easier than in many criminal cases that you'll sit or have sat on in the past, but we need to go through some basics, like we did in voir dire. Namely, the defendant has the presumption of innocence. That's not evidence like a witness who took the stand in this case and cross-examined and his credibility and demeanor was tested in front of you. It's not proof of anything, just as

the defendant's failure to testify is not proof of anything.

The prosecutor made no further comment even vaguely resembling a reference to defendant's failure to testify. After closing arguments, the jury retired to the jury room and took with it all of the court's instructions, including the one defendant had submitted pertaining to his failure to testify. A guilty verdict was returned in thirty-seven minutes. Subsequently the court sentenced defendant, having found him to be a prior offender. In order to put the challenged comment by the prosecutor into proper perspective, we note also that on voir dire, defense counsel questioned prospective jurors on whether they would be affected if defendant did not take the stand.[2]

■ The privilege against self-incrimination is guaranteed by both the federal and state constitutions, and has also been the subject of both a statute and a Supreme Court Rule. Section 546.270, RSMo.1978; Rule 27.05(a). Both direct and indirect references at trial to a defendant's failure to testify are forbidden. Direct references are those which utilize the words "defendant" or "accused," and "testify." Indirect references are those which are reasonably apt to have directed the jury's attention to the defendant's failure to testify. *State v. Shields*, 391 S.W.2d 909, 912–13 (Mo.1965). Direct references, if properly preserved, almost always require a reversal. *See, e.g., State v. Shuls*, 329 Mo. 245, 44 S.W.2d 94 (1931).

■ The prosecutor's comment in the present case was a direct reference to defendant's failure to testify. However, because defendant made no objection, the issue was not properly preserved for our review. *State v. Bankhead*, 536 S.W.2d 172 (Mo.App.1976). We, therefore, must

---

2. The defense attorney's voir dire included the following:

So, it's a much greater standard than in a civil case. For example, one of the consequences of it is the defendant does not have to testify in court. In a civil case—he would not have to testify in a civil case, either—but in a criminal case, your don't hold that against

him and you can't use that as any evidence against him. . . .
Is there anybody in the courtroom that, if Mr. McKinley does not testify, is there anyone who feels that they would hold that against him and take that as evidence against him in this trial; is there anyone that feels that way?

determine whether the plain error rule should be invoked in this case. Rule 30.20 provides that "[p]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The Missouri Supreme Court further elaborated on the plain error doctrine in *State v. Hurtt,* 509 S.W.2d 14, 15 (Mo.1974), wherein it stated:

> In order to invoke the plain error rule there must be a "sound, substantial manifestation ... a strong, clear showing, that injustice or miscarriage of justice will result if the rule is not invoked." [citation omitted] ... When guilt is established by ... overwhelming evidence no injustice or miscarriage of justice will result from a refusal to invoke the rule.

Two more recent pronouncements have been made by the Missouri Supreme Court which also aid us in resolving this case. Both of them involve arguments to the jury. In *State v. Murphy,* 592 S.W.2d 727, 732 (Mo.1979), the court affirmed a life sentence and held that:

> The [plain error] rule does not cover all trial error, should be exercised sparingly, cannot be used as a vehicle for review of every alleged trial error which is not asserted or preserved for review, and is limited in its application to cases where there is a manifestation and showing that injustice or miscarriage of justice results if the rule is not invoked. Ordi-

narily, alleged errors on closing argument do not justify relief under this standard unless they are determined to have a decisive effect on the jury.

These principles were reiterated in the affirmance of a death penalty in *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982).

▋ Although defendant asks us to invoke the plain error rule in this case, most of the cases he cites involve harmless error. He fails to cite any cases which were reversed for plain error because of a direct reference in closing argument to a defendant's failure to testify.[3] Our research reveals that there are cases in which such a reference was held to deprive the accused of a fair trial. *See, e.g., State v. Ellinger,* 549 S.W.2d 136 (Mo.App.1977).

In *Ellinger,* the defendant was convicted of exhibiting a deadly weapon in a rude, angry and threatening manner in a restaurant. He challenged the prosecutor's closing argument on appeal, but had not objected at trial. The *Ellinger* court held that "[o]n the issue now presented as to whether manifest injustice has appeared, the touchstone of that inquiry is a consideration of all the evidence in the case and any other facts which may indicate the prejudicial effect of the error." *Id.* at 140. The court went on to note that defendant's witnesses presented a version of the event in question which was radically different from the version presented by the state's witnesses. The court further noted that

---

**3.** It is important to note the distinction between harmless error and plain error in a criminal case, and how an appellate court approaches the review of each. In a harmless error case, defendant properly preserves his point. On appeal, the state is confronted with the presumption that the error was prejudicial. *State v. Howard,* 601 S.W.2d 308 (Mo.App.1980). The state has the burden of proving beyond a reasonable doubt that the error was harmless. *State v. Miller,* 650 S.W.2d 619, 621 (Mo. banc 1983).

In a plain error case, the alleged error is defectively preserved or not preserved at all. However, the court still may consider errors affecting substantial rights when it deems that manifest injustice or miscarriage of justice has resulted. Before applying the plain error rule, the court must find a "sound, substantial man-

ifestation" and a "strong, clear showing" that injustice will result, and the appellant has the burden of proving that the error amounted to manifest injustice or miscarriage of justice. *State v. Hurtt,* 509 S.W.2d 14, 15 (Mo.1974). Thus, there is a substantial difference between harmless error and plain error both in the burden of proof and the standard of appellate review.

The United States Supreme Court recognizes that constitutional error may be harmless in certain situations. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Our courts follow the same rule. *State v. Miller,* 650 S.W.2d at 621. Given that properly preserved constitutional error can be harmless error, it follows that *unpreserved* constitutional error does not mandate invocation of the plain error rule in every case.

after approximately three and one half hours of deliberation, the jury informed the court that they could not reach a unanimous verdict, and that they were in conflict as to what certain witnesses had testified. The trial court instructed the jury that it would simply have to remember the evidence. After approximately another hour and one half of deliberation, the court gave the "hammer" instruction. The jury returned a verdict a short time later. In reversing and remanding *Ellinger* for a new trial, the court stated, "In these circumstances, it cannot be said that the guilt of the defendant is shown by such overwhelming and uncontradicted evidence that the error in the argument demonstrated above did not result in a manifest injustice to substantial rights of the defendant." *Id.* at 140.[4]

We have been unable to find a plain error case in which a direct reference was made in closing argument and in which the court gave the instruction on defendant's failure to testify, MAI–CR2d 3.76. Here, MAI–CR2d 3.76 was given at defendant's request. The giving of the instruction is, in itself, a comment by the court on the failure of the defendant to testify. *State v. Smart*, 485 S.W.2d 90, 95 (Mo.1972) (quoting *State v. Kimball*, 176 N.W.2d 864, 868 (Iowa 1970)). Our Supreme Court has indicated in a harmless error case that a defendant's request for this instruction may waive his constitutional protection against an indirect reference to his failure to testify. *State v. Zagorski*, 632 S.W.2d 475, 478 (Mo. banc 1982). Here, we need not reach the question of whether the request for the instruction constitutes such a waiver in a direct reference case. However, in determining whether we will invoke the plain error rule, we may consider the request for

the instruction along with all the other circumstances of the case when we determine the prejudicial effect of the prosecutor's comment.

■ The strength of the state's case is a prime factor in the determination of whether the trial court's error resulted in a manifest injustice or a miscarriage of justice. Here, the state made an extremely strong case. It was the defendant who asked for the instruction on the effect of his failure to testify. The prosecutor's argument contained no further reference than that quoted above. The jury did not assess punishment, and deliberated only thirty-seven minutes. Under these circumstances, we find no manifest injustice or miscarriage of justice.

Judgment affirmed.

CRANDALL, J., concurs.

KAROHL, J., dissents.

KAROHL, Judge, dissenting.

I respectfully dissent.

The issue before the court in this case is whether the state may directly refer to the defendant's failure to testify, a violation of the defendant's constitutional, statutory and rule protection against self-incrimination, without committing prejudicial plain error. Also at issue is whether the court must on its own motion declare a mistrial if the state makes a direct reference argument and whether defendant's voir dire questions or his submission of an MAI–CR 3.76 instruction is a waiver or in some way removes the prejudice of the argument.

The privilege against self-incrimination is unique in that it is a constitutional privilege found in both the federal and state constitutions which has been reenforced by both

---

4. We are aware of the case of *State v. Gray*, 503 S.W.2d 457 (Mo.App.1973). A hurried reading of the broad language used therein might lead one to conclude that all direct references, whether preserved or not, necessitate a new trial. However, a careful reading of *Gray* reveals that the trial judge himself was the offender, not the prosecutor. The defendant was appearing pro se and failed to object when the court said, "Will you be sworn, sir; are you going to testify?" In addition, no instruction on the issue was given by the court, as was done in the present case. *Gray* does not control here. Furthermore, *Gray* predates the Missouri Supreme Court cases of *State v. Hurtt*, 509 S.W.2d 14 (Mo.1974); *State v. Murphy*, 592 S.W.2d 727 (Mo.1979); *State v. Newlon*, 627 S.W.2d 606 (Mo. banc 1982); *State v. Zagorski*, 632 S.W.2d 475 (Mo. banc 1982); *State v. Miller*, 650 S.W.2d 619, (Mo. banc 1983).

statute, § 546.270 RSMo 1978, and Supreme Court Rule 27.05(a). No other privilege has enjoyed the composite protection offered by constitutional, statutory and rule provisions. Read together these provisions absolutely forbid any reference before the jury to the constitutional right against self-incrimination. *See State v. Barker*, 399 S.W.2d 1, 3 (Mo.1966). This court noted in *State v. Gray*, 503 S.W.2d 457, 463 (Mo.App.1973) that a direct reference is plain error and "the only way to cure such a transgression is to abort the trial." *Id.* at 463.

The prosecutor's comment which violated defendant's privilege against self-incrimination occurred at the very beginning of the state's closing argument. An analysis of the argument indicates that the state attacked the presumption of innocence claiming it is less probative than testimony which is subject to cross-examination. Our appellate courts have frequently recognized that presumptions are the equivalent of proof. This was followed by a statement indicating that defendant's failure to testify was not proof of innocence or guilt. This was a direct attack on the foundation of our system of criminal law since the defendant had no burden of proof on innocence. *See Charles v. State*, 573 S.W.2d 139, 141 (Mo.App.1978).

The state's response to appellant's point on appeal is:

> The trial court did not commit plain error by not declaring a mistrial, sua sponte, when the prosecutor noted in closing argument that "the defendant's failure to testify is not proof of anything", because the prosecutor's statement was nonprejudicial and any error had been waived by the defendant in that (1) the prosecutor's statement contained only a general statement of the law and (2) appellant's trial counsel, during voir dire examination, repeatedly indicated that the appellant might not testify, and that the jury was to be precluded from drawing adverse inferences from the defendant's failure to testify or present any evidence.

The function of voir dire is the selection of a fair and impartial jury. In conducting a voir dire examination competent counsel must consider the nature of the case, the source and type of evidence to be offered, and the effect on the jury of defendant's failure to take the stand and deny the charge or offer a defense.

We have held that the voir dire inquiry may be a waiver of the privilege against comment on defendant's failure to testify in indirect reference cases. *See State v. Harris*, 636 S.W.2d 403, 404–405 (Mo.App. 1982) and *State v. Wilborn*, 525 S.W.2d 87, 94–95 (Mo.App.1975). However, indirect references are not plain error. We said in *State v. Gray*, 503 S.W.2d at 462–463 that a direct reference is plain error. In order to achieve both the purpose of voir dire and insure protection of defendant's rights against self-incrimination the voir dire questions cannot be deemed a waiver of defendant's right. The questions' sole purpose is to pick an impartial jury and should not be deemed a waiver of any rights later in trial.

For similar reasons the defendant's request of an MAI–CR 3.76 instruction should not be a consideration in determining nonprejudice in a direct reference case. The instructions are determined before argument. The mandates of both constitutions, the statute and rule are applicable at the time instructions are determined and continue in force thereafter, including during closing argument. The instruction given by the court does not and should not lessen the prohibition against a direct reference argument. It should not be considered a waiver permitting direct references in any part of the state's closing argument with the possible exception of a re-reading of the instruction and then only with the permission of the court. Our Supreme Court recently said in *State v. Williams*, 673 S.W.2d 32, 36 (Mo. banc 1984),

> It is appropriate to express concern about prosecutor's attempts at subtle comment about the defendant's failure to take the stand. Perhaps some of our holdings have been too tolerant of subtle

references. A holding that a comment during argument does not require reversal of a particular conviction is not a license for the prosecutor's use of similar argument in future cases.

In *Williams* the court reversed on other grounds but elected to discuss the issue in an indirect reference case. My dissent is addressed to the same concern, that prosecutors should not be permitted to make any reference to defendant's failure to testify.

I would hold that the state may not make a direct reference argument as it is a violation of constitutional, statutory and rule prohibitions. Such argument is plain error and presumptively prejudicial and neither voir dire nor MAI–CR 3.76 instruction, individually or collectively, constitute either a waiver of the privilege nor render the argument harmless error. *State v. Gray,* 503 S.W.2d 457 (Mo.App.1973). None of the cases cited in the majority opinion's footnote number 4 commenting on *Gray* dilute the effect of the *Gray* opinion. None of those cases deal with a prohibited direct reference to the defendant's failure to testify. In one case the defendant testified, in another there was at most an indirect reference, in another there was found to be no reference at all. One dealt with the issue of the introduction of evidence contended to be prejudicial. One dealt with a contention of argument error in the sentencing phase of a capital murder case and the disputed argument had nothing to do with the failure of the defendant to testify.

I attach great significance to the statutory and rule reenforcement of the constitutional guarantees against self-incrimination and believe that their violation by a direct reference is plain error and prejudicially erroneous. If this view was adopted the rule in the prosecution of criminal cases would be clear and this contention of error would be eliminated from future appeals. It would likewise insure that the defendant has the special privilege guaranteed by constitutions, mandated by the legislature and reenforced by Supreme Court rule. The state, defendants and courts would have the benefit of the virtue of certainty and the absence of confusion.