STATE of Missouri, Respondent,

v.

Gene E. DUDLEY, Appellant.

No. 37596.

Missouri Court of Appeals,
Western District.

Nov. 25, 1986.

As Modified Feb. 3, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 3, 1987.

Application to Transfer Denied
March 17, 1987.

518

Sandra Davidson Scott, Columbia, for appellant.

Carrie Francke, Asst. Atty. Gen., Jefferson City, for respondent.

Before GAITAN, P.J., and DIXON and TURNAGE, JJ.

GAITAN, Presiding Judge.

Defendant-appellant, Gene E. Dudley, was convicted by a jury of the felony sale of cocaine, a Schedule II controlled substance, in violation of § 195.020 RSMo and sentenced as a prior offender to ten years. He appeals the judgment of the trial court alleging it erred as follows: (1) in admitting inadmissible hearsay testimony; (2) in overruling appellant's motion for acquittal because there was insufficient evidence that appellant knowingly sold cocaine; (3) failing to sua sponte reprimand the prosecutor, give a cautionary instruction, declare a mistrial or instruct the jury to disregard the prosecutor's comment on appellant's failure to testify; (4) in failing to sua sponte reprimand defense counsel, give a cautionary instruction, declare a mistrial or instruct the jury to disregard defense counsel's remark that appellant's co-actor, Mr. Balke, was "in the state penitentiary,"; (5) in failing to sua sponte strike evidence of the cocaine for failure of the State to show a chain of custody. The judgment of the trial court is affirmed.

Morris Howard Poe, Jr., working as an undercover narcotics agent for the Division of Drug and Crime Control of the Missouri State Highway Patrol, had been doing business regularly with a William Brad Balke. On May 10, 1984, Balke came to Poe's residence at 11:00 a.m. in Sedalia, Missouri. Balke and Poe picked up a man who was introduced to Poe as Jimmy Francis. The three men then drove to Kansas City.

After arriving in Kansas City, Francis made some phone calls and the three drove around looking for a woman named Miss Van Dyne. They eventually found Miss VanDyne and followed her to 2407 Jackson Street.

Around 3:00 p.m., defendant pulled into the driveway at 2407 Jackson Street. Poe waited near his car as Balke, Francis, Van-Dyne and defendant went inside the resi-

dence at 2407 Jackson for approximately five minutes and came back out. Defendant stood in the driveway, while Balke and Francis went over to talk to Poe. Poe gave $680 to Balke. Balke, Francis and defendant left together and were gone approximately one hour.

After 4:00 p.m., defendant, Balke, and Francis returned to 2407 Jackson and went inside the residence, accompanied by Miss VanDyne. Poe was still sitting in his car. A few minutes later, Francis appeared at the door and motioned for Poe to come inside. Once inside, Poe saw Balke and defendant removing a small amount of white powder from a blue paper envelope. They placed the powder onto a magazine cover. Balke put what was left in the blue envelope into a clear plastic bag. Balke gave the plastic bag to Poe, who put the bag inside his sock.

Balke and Francis then told Poe that defendant "wanted $70.00 for his trouble, for going after it." Poe took a $50 bill and a $20 bill from his wallet. Defendant did not take the money, but stood back and let Balke take it from Poe. Balke then gave the money to defendant, who placed it on the fireplace mantel.

Poe and Balke began the return trip to Sedalia. On the way Balke demanded that Poe give Balke some of the cocaine. Without saying anything, Poe removed the plastic bag from his sock and laid it on the seat of his car. Balke removed some of the white powder from the plastic bag, and Poe returned the plastic bag to the inside of his sock. Poe took Balke home and then returned to his trailer house.

Once at home, Poe marked the evidence and locked it in his briefcase. On May 12, he turned the plastic bag over to Sergeant Cox. Poe had placed a small card with information on it inside the plastic bag, and then placed the plastic bag inside another plastic bag.

Forensic Chemist Everett Markway, Jr. analyzed the white powder and formed the opinion that it contained cocaine. Defendant presented no evidence. The jury returned a verdict of guilty, and this appeal followed.

**520**

## I.

 Defendant objects to Poe's testimony that Balke and Francis told him that defendant "wanted $70 for his trouble, for going for it." He objects to this as hearsay within hearsay. We believe, however, that this comment was admissible as a declaration of co-conspirators made in furtherance of a conspiracy. *United State v. Fuhr*, 660 S.W.2d 443, 447 (Mo.App.1983). "In ruling on admissibility, the trial judge must first determine whether any evidence of conspiracy appears, (citations omitted) whether by direct and positive proof or by inference from the facts and circumstances in evidence." *Id.* While the general rule is that proof of conspiracy should come before the declaration of a fellow conspirator, this rule is flexible and the order of proof rests with the trial court's discretion. *State v. Danforth*, 654 S.W.2d 912, 921 (Mo.App.1983); *State v. Yingst*, 651 S.W.2d 641, 645 (Mo.App.1983).

 A conspiracy need not be charged in the indictment or information. *Fuhr*, 660 S.W.2d at 488. Moreover, the evidence required to show the existence of a conspiracy for purposes of admitting into evidence the declaration of a co-conspirator differs from the evidence required to convict someone of conspiracy. *Id.* "The former requires only a showing of an agreement between defendant and declarant and a statement in furtherance of their scheme." *Id.* This showing can be by independent evidence indicating a defendant's extensive involvement in the conduct of a co-defendant. *State v. Baldwin*, 358 S.W.2d 18, 24 (Mo.1962). A conspiracy can be proven by circumstantial evidence. *State v. Danforth*, 654 S.W.2d 912, 920 (Mo.App.1983).

Poe's testimony was that defendant, Balke and Francis were together when the inculpatory statements were made. It is significant that defendant did not deny the statements at the time they were made. There was evidence that defendant, Balke, and Francis were involved in the sale. There was also evidence that defendant directed his actions through Balke and Francis. This evidence was sufficient to show that defendant conspired with Balke and Francis to sell the cocaine. Defendant's first point is denied.

## II.

Defendant challenges the sufficiency of the evidence to support his conviction. Specifically, defendant alleges there was insufficient evidence to show that he knew that the white-powdered substance was cocaine.

In determining whether there is sufficient evidence to sustain a criminal conviction, an appellate court must accept as true all evidence, direct and circumstantial, and all reasonable inferences which are most favorable to the State and disregard the evidence and inferences contrary to a finding of guilt. *State v. Ritterbach*, 637 S.W.2d 820, 822 (Mo.App.1982); *State v. Garrett*, 627 S.W.2d 635, 642 (Mo. banc 1982), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). The appellate court's function is not to weigh the evidence, but rather, to determine whether there was substantial evidence to support the jury verdict. *Ritterbach*, 637 S.W.2d at 822. "Substantial evidence means evidence from which the trier of facts could find the issue in harmony therewith." *Id.*

 The evidence in this case was that Trooper Poe, in his undercover work, had dealings with Balke. Poe, Balke and Francis drove from Sedalia to Kansas City and eventually met up with defendant. Balke and Francis met with defendant for about five minutes inside the house at 2407 Jackson and then had a conversation with Poe. Poe gave them $680 and Balke, Francis and defendant left for an hour. When they returned, everyone went inside and Balke and defendant packaged a "white substance" which they gave to Poe. Poe was told defendant wanted an additional $70 "for his trouble for going after it." This statement was made in defendant's presence. The substance later was determined to be cocaine. Although defendant avoided directly handling the money, there is no question that he was the principal operative in this sale.

Defendant's assertion that there was no evidence that he knew the substance was cocaine is without merit. In *State v. Collins*, 601 S.W.2d 640, 641 (Mo.App.1980), the court held "[t]here is no question but that the state must prove the defendant was knowingly engaged in the sale of heroin before a conviction will lie, but, absent a confession, such knowledge is often not susceptible of direct proof. Accordingly, it is well within the province of the jury to infer such knowledge from the ambient facts and circumstances." The State adduced adequate evidence to demonstrate that defendant was a participant in this sale, and was aware of the character of the substance sold. Defendant's challenge to the sufficiency of the evidence on this point is without merit.

### III.

 Defendant claims that the trial court erred by not declaring a mistrial, *sua sponte,* or otherwise remedying the prosecutor's alleged comment on defendant's failure to testify. Defendant failed to object to the prosecutor's comments at trial, nor did he raise the issue in his motion for new trial. Therefore, any review should be conducted under the plain error standard. *See State v. Crawford*, 719 S.W.2d 11 (Mo. App.1986); *State v. McKinley*, 689 S.W.2d 628, 631–32 (Mo.App.1984); Supreme Court Rule 29.12(b). Because review is for plain error, the court must find not only error, but also that manifest injustice has resulted from the error. Rule 29.12(b); *Crawford,* slip op. at 12.

 Manifest injustice will not result from error in closing argument unless the court finds the error had a decisive effect on the jury deliberations. *State v. Murphy*, 592 S.W.2d 727, 732 (Mo. banc 1979). There must be a strong, clear showing that injustice or a miscarriage of justice will ensue if the rule is not invoked. *State v. McKinley*, 689 S.W.2d 628, 632 (Mo.App., E.D.1984), quoting *State v. Hurtt*, 509 S.W.2d 14, 15 (Mo.1974).

The comments at issue came in final closing argument and are as follows:

MR. OSSORIO: Ladies and gentlemen, let me briefly address a couple of points that Mr. Gallipeau raised. First of all, this defendant's reputation; he was in that room and if he was worried about his reputation, he could have left the room. He could have refused the money. There are a lot of things he could have done, but it is undisputed, no testimony, silence, and in this case, his actions speak louder than words.

 There was no showing of manifest injustice in this case for three reasons. The prosecutor's comment was neither a direct nor indirect reference to the failure of defendant to testify. Second, the court instructed the jury concerning defendant's right not to testify. Thirdly, there was overwhelming evidence of defendant's guilt.

 "Only direct and certain, nonambiguous and unequivocal comments on a defendant's failure to testify amount to a violation of the constitutional and statutory privilege against self-incrimination." (citations omitted). *State v. Mayfield*, 562 S.W.2d 404, 411 (Mo.App.1978). Comments which constitute neither a direct nor an indirect reference to the defendant's failure to testify are permissible. *See State v. Hamilton*, 612 S.W.2d 141, 145 (Mo.App. 1980).

 Here the comments were definitely not direct nor do we believe them to be indirect. However, if they were indirect they do not specifically draw the attention of the jury to the fact that the defendant did not testify. Consequently, these comments did not cause reversible error. *State v. Johnson*, 697 S.W.2d 228, 230 (Mo. App.1985).

"The declaration of a mistrial is a drastic remedy, and the power of the trial court in this respect 'should be exercised only in extraordinary circumstances.'" (Citation omitted). *State v. Young*, 701 S.W.2d 429, 434 (Mo. banc 1985) cert. denied — U.S. ——, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986). Moreover, the trial court instructed the jury, pursuant to MAI–CR2d 3.76, which states: "Under the law, a defendant has the right not to testify. No presumption of

guilt may be raised and no inference of any kind may be drawn from the fact the defendant did not testify." The submission of such an instruction mitigates against the finding of prejudice since it will be presumed that the jury followed the court's instruction. *See State v. Chamberlain,* 648 S.W.2d 238, 241 (Mo.App.1983). For the aforesaid reasons, defendant's claim of error as to point III fails.

### IV.

Defendant claims that the trial court erred in not declaring a mistrial, *sua sponte,* or otherwise remedying the following comment made by defense counsel in closing argument: "[t]he State did not bring Mr. Balke in, and I assure you he is more readily available to them than he is to me. He's in the State penitentiary ..."

As previously noted, manifest injustice will not result from error in closing argument unless the court finds the error had a decisive effect on the jury deliberations. *See State v. Murphy,* 592 S.W.2d 727, 732 (Mo. banc 1979). There must be a strong, clear showing that injustice or miscarriage of justice will ensue if the rule is not invoked. *State v. Crawford, supra; State v. McKinley,* 689 S.W.2d 628, 632 (Mo.App. 1984), quoting *State v. Hurtt,* 509 S.W.2d 14, 15 (Mo.1974).

There was no such showing of manifest injustice in this case. Defense counsel's remark does not indicate that Balke is in the penitentiary because of the crime giving rise to the instant case. The statement was merely that Balke was in the penitentiary.

This point on appeal is without merit.

### V.

In a *pro se* claim, defendant challenges the admission of the cocaine at trial. Specifically, he contends that an insufficient chain of custody was established. No objection was raised at trial to the admission of State's Exhibit 1 nor was an objection raised in defendant's motion for new trial. Review can be had, then, only for plain error. *State v. Trimble,* 601 S.W.2d 663, 664 (Mo.App.1980); Rule 29.12(b).

The admission of demonstrative evidence, including the determination as to whether a chain of custody was properly established, is a matter within the discretion of the trial judge. *State v. Sherrill,* 657 S.W.2d 731, 736 (Mo.App.1983). The trial court is in the best position to assure that there has been no improper tampering with an exhibit. *See State v. Murray,* 630 S.W.2d 577, 581 (Mo. banc 1982). In establishing a chain of custody, there is no requirement that the State must account for hand-to-hand custody of the evidence from the time it is obtained to the time it is admitted to trial; rather, the evidence is sufficient if it shows "reasonable assurance" that it was the same and in the same condition as when it was received. *State v. Branscomb,* 638 S.W.2d 306, 308 (Mo.App. 1982). Further, the chain of custody of physical evidence is irrelevant where the exhibit is positively identified. *State v. Ingram,* 607 S.W.2d 438, 441 (Mo.1981); *State v. Mangan,* 624 S.W.2d 156, 157 (Mo. App.1981).

In this case, positive identification of State's Exhibit 1 was made by Trooper Poe, Sergeant Cox and Everett Markway. Further, hand-to-hand custody was accounted for—from Poe to Cox to Markway to Poe. Markway testified about the analysis he performed and said he believed the substance to be cocaine. There was no error in the admission of this evidence. Defendant's *pro se* assertion is without merit.

For the aforesaid reasons, the judgment of the trial court is affirmed.

TURNAGE, J., concurs.

DIXON, J., concurs in separate opinion.

DIXON, Judge, concurring in result.

I concur in the result of the principal opinion because I do not believe that any manifest injustice occurred in the trial of this case because of the prosecutor's comments. I do not agree with the statement in the majority opinion that the comment of

the prosecutor was not an indirect comment on the defendant's failure to testify. I believe that it was.

In 1981, we certified the case of *State of Missouri v. Ricky Zagorski* to the supreme court, *see State v. Zagorski*, 632 S.W.2d 475 (Mo. banc 1982), to settle the vexing problems arising from the prosecutorial use of comments designed to call the jurors' attention to the defendant's failure to testify. The uncertainty and confusion has not been dispelled—subsequent cases make it plain that determinations of error in such cases are made on an ad hoc basis without any consistent principle governing review. The state of the law simply encourages prosecutors to chance reversal by skirting direct comment as closely as possible. The following cases demonstrate the continuing confusion.

In *State v. Farris*, 649 S.W.2d 554, 555 (Mo.App.1983), *citing State v. Robinson*, 641 S.W.2d 423, 426 (Mo. banc 1982); *State v. Zagorski*, 632 S.W.2d at 478–479; and *State v. Frankoviglia*, 514 S.W.2d 536, 541 (Mo.1974), the court stated that regarding the defendant's right not to incriminate himself, the line between proper and improper prosecutorial argument has now been firmly drawn and held that "prosecutorial arguments do not incur the wrath of the respective constitutional provisions unless they contain 'direct' and 'certain' references to an accused's failure to testify." *State v. Chunn*, 657 S.W.2d 292, 294 (Mo. App.1983), on the other hand, held that both direct and indirect references to the defendant's failure to testify are impermissible. To be an indirect reference to the accused's failure to testify, the comment must be one that, when viewed in context, would cause the jury to infer that the remark referred to the accused's failure to testify. *Id.*

Although the case was reversed on other grounds, the court in *State v. Williams*, 673 S.W.2d 32, 35 (Mo. banc 1984), a murder case, had "no hesitation" in finding that the prosecutor's argument that "only two people" knew "what happened" contained an improper reference to the defendant's failure to testify. Compare *State v.*

*Farmer*, 699 S.W.2d 86, 87 (Mo.App.1985), in which a sodomy victim testified at trial and the defendant did not. When the prosecutor argued that the victim told the jury the truth and that the victim was the only one other than the defendant who knew what happened, the trial court sustained an objection but denied a mistrial. *Id.* On appeal the court found that the comment did not constitute an indirect reference to the failure of the defendant to testify which would render the conviction "voidable." *Id.* Deferring to the discretion of the trial judge, defendant's conviction was affirmed. *Id.*

*State v. Horne*, 691 S.W.2d 402, 405 (Mo. App.1985), held that the prosecutor's statement to the jurors, that they should not give the defendant's written statement the same consideration as they should the sworn testimony of another witness, was merely a comment on the evidence and not an improper indirect reference to defendant's failure to testify. Likewise in *State v. Hill*, 678 S.W.2d 848, 850 (Mo.App.1984), the court found that the prosecutor's statement, "[W]e cannot get inside of the defendant's mind to know what his thoughts were," while less than proper, was not an indirect reference to defendant's failure to testify in the context in which it was made because the prosecutor was focusing on the verdict director when he said it.

As the law presently exists, it appears that almost any indirect comment about the defendant's failure to testify can be rationalized away by some circumstance of the case. As Judge Seiler stated in his dissent in *Zagorski*, 632 S.W.2d at 480:

> By what we are doing, we are again encouraging the use of devious and slick argument by prosecutors, this time on the ground it was only a response to an attack by cross examination. Such an excuse will always be present in a contested criminal trial.