STATE of Missouri, Respondent,

v.

William D. JOHNSON, Appellant.

No. 62270.

Supreme Court of Missouri,
Division No. 1.

July 14, 1981.

James L. Thomas, Henderson, Heagney & Thomas, St. Louis, for appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

This appeal is from a conviction on jury trial for first degree robbery (§ 569.020, RSMo 1978), first degree burglary (§ 569.-160, RSMo 1978), and kidnapping (§ 565.110, RSMo 1978), with sentence by court as a persistent offender (§ 558.016, RSMo 1978), to life imprisonment and two terms of 30 years' imprisonment.

At around 3:00 P.M. on July 26, 1979, on the second floor of her home in St. Louis, Mrs. Carolyn Strassner encountered an armed man, whom she subsequently identified as appellant, William D. Johnson. After threatening to shoot Mrs. Strassner if she panicked, appellant directed her to accompany him through the house in a search for valuables. Appellant seized several items of jewelry and upon discovering a savings account passbook ordered Mrs. Strassner to drive in her auto to a nearby bank facility where the deposit was held. There, Mrs. Strassner, with appellant holding his gun at her waist, withdrew $300 from her account and gave it to appellant. The transaction was recorded by bank cameras and the teller subsequently identified appellant as the person accompanying Mrs. Strassner.

Appellant ordered Mrs. Strassner to drive around for about ten minutes, when he ordered her out of the auto and left in Mrs. Strassner's car.

The next day, the car was found and two rings taken from the Strassner residence were recovered by police. Mrs. Strassner picked out appellant's photograph from a display of some 240 photographs of black males. On the basis of her photographic identification and an informer's tip, appellant was arrested at around 7:30 P.M., July 27, 1979, at Magdala House, a halfway house to which he had been assigned by the Division of Corrections in connection with a prior conviction.

In this Court, appellant's first assignment of error is based upon the trial court's overruling of his motion to suppress his in custody statements to police officers. Appellant complains that statements attributed to him were made in response to police questions that persisted after he had declined to be questioned further until he was permitted to consult an attorney.

Appellant's testimony at the pretrial suppression hearing was that he made no statement to police. The testimony of a police officer was that upon his arrest appellant was given *Miranda* warnings (as appellant acknowledged) and that he declined to make any statement. The officer testified further that, after the victim had picked appellant out of a line-up at headquarters, appellant, again advised of his rights and the victim's identification, refused to make a statement, but that when he was returned to the 7th District Station for booking for the offense, appellant volunteered the statement: "Well, you all got me. I might as well go on tell the truth." He told the officer that he had given the gun to his brother who lived at his mother's house. The officers went to the house but did not locate the gun. When they told appellant so, upon their return, appellant said that some of the jewelry he took was in his mother's house in a bag behind a couch in the basement. He offered to show the officers where it was, but when they got to the house, appellant didn't want to go in and the officer, with his mother's consent, looked where appellant had told them the bag was and found a traveling bag containing several items of jewelry, subsequently identified as having come for the Strassner residence.

The trial court found that appellant "* * * was thoroughly advised of his rights,

and, based on the evidence adduced, * * * he elected voluntarily to make a statement." This finding is amply supported by the evidence. That conclusion is dispositive of appellant's contention on appeal, which is based upon appellant's version of the interrogation. *State v. Olinghouse*, 605 S.W.2d 58, 66 (Mo.banc 1980); *State v. Higgins*, 592 S.W.2d 151, 158 (Mo.banc 1979).

Appellant's second point is based upon the trial court's overruling of his motion to suppress evidence pertaining to the contents of the bag discovered by police in his mother's house.

■ The state's evidence on the motion to suppress was that three visits were made by police to appellant's mother's house. The first produced nothing in the way of evidence. The second visit was made after appellant told police that he had given the weapon to his brother. The police returned to the house and talked with the brother, who denied any knowledge of the weapon. When the police returned to the station and told appellant the weapon had not been found, appellant told them that some of the loot from the robbery was behind a couch in the basement of his mother's house. He told the officers that he would show them where the items were and accompanied the officers on their third trip. However, when he got to the house, he did not want to go in and he told the officers to tell his mother to let them go in the basement and "get the stuff out of the basement." The officers were admitted to the house by one of the occupants and found the bag containing jewelry in the place described by appellant.

■ This evidence sufficiently supports the trial court's finding that appellant consented to the search. The state's evidence showed a voluntary consent by appellant to the search in question. He was in custody at the time of the consent but that fact did not preclude his giving a voluntary consent to the search.

Defendant, no novice in criminal law, having been previously convicted on two occasions, had been advised twice of his *Miranda* rights and had volunteered to help police clear up the matter. He accompanied the police to his mother's but declined to go in because he did not want to face her. Appellant's denial of having made any statement or of having given his consent to the search was not considered credible by the trial court, particularly in view of the evidence that the jewelry was found in a concealed location. Appellant was the only logical source of the information necessary to locate the loot.

Having consented to the search, the complaint of appellant is without merit.

Appellant complains of the trial court's overruling of his objection to the placing in evidence of a "mug shot" of appellant, taken on his arrest for the offenses involved in this case. The state offered the photograph in order to show the difference between appellant's appearance at the time of his arrest, one day after the occurrence, and his appearance at the trial. Defense counsel objected, asserting that if the state desired to make such a showing, it should use a line-up photograph because it would be "less prejudicial." Such is the essence of the complaint here.

The "mug shot" placed in evidence shows two views of appellant's face, a department number, a date—"7 28 79"—, the name of appellant and his description, including age, height, weight, hair and eye color.

The use of "mug shots" has been condemned because of the inference which they carry of a previous criminal record. See *State v. Harris*, 534 S.W.2d 516 (Mo.App. 1976). However, a "mug shot" which clearly shows that it was taken in connection with the arrest for the offense for which the defendant is on trial carries no such inference. See *State v. Poor*, 533 S.W.2d 245, 250–251[9] (Mo.App.1976); *Cox v. State*, 578 S.W.2d 54, 55[7] (Mo.App.1978).

■ Appellant's argument that the state should have used a "nonsuggestive" line-up photograph affords no basis for finding error on the part of the trial court. The state's objective was to show that appellant's facial appearance had changed between the time of the offense and the trial

by cutting his hair and shaving off his goatee. The photograph employed would show these changes more clearly and the trial court did not err in permitting its use for such purpose.

Appellant's final objection is to the trial court's permitting the reading of the testimony of a state's witness at a prior trial on the theory that the witness was unavailable at the time of the trial here under review.

Carroll McShane, the matron of the half-way house at which appellant resided at the time of his arrest, testified at a prior trial that officers came to the residence to arrest appellant between 6:30 and 8:00 P.M., July 27, 1979. By agreement the residence was described as a "boarding house" and appellant as a "tenant." Ms. McShane testified that the officers informed appellant they were arresting him, read him his rights and asked for permission to search his room, to which appellant consented; that she and two officers went upstairs to appellant's room where the officers searched the drawer that belonged to appellant and removed two automobile keys from the drawer. She also testified that appellant was wearing jewelry at the time of his arrest.

The first trial, on March 4, 1980, ended in a mistrial, requested by defendant because of the outburst of a spectator. The case was reset for trial on March 8, 1980, and Ms. McShane was present at that time but the case was continued for 30 days at the request of defendant because of possibly prejudicial publicity.

When the case came on for trial on April 7, 1980, Ms. McShane called the prosecutor and told him that she would be unable to attend the trial. On April 2, 1980, she had given birth to a child, one month overdue, and she had remained in the hospital until 11:00 A.M., April 7. She was released from the hospital at that time, and, after being taken from the hospital in a wheel chair, was driven to her home under directions by her obstetrician not to leave the house for two weeks.

Based upon evidence of these facts presented by the testimony of Ms. McShane's mother, the trial court ruled that she was "unavailable" and permitted the reading of the examination and cross-examination of the witness at the earlier trial.

Appellant here complains that the witness was not truly "unavailable" because the state failed to make a good faith effort to procure her presence and that the reading of her testimony violated his right to confront witnesses against him, in violation of federal constitutional guarantees.

■ The applicable law appears in *State v. Murphy*, 592 S.W.2d 727, 731[6, 7] (Mo.banc 1979):

"The right of confrontation and cross-examination is an essential and fundamental requirement for a fair trial. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Mo.Const. art. I § 18(a) cl. 3. An exception exists where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by the defendant. A witness is not unavailable unless the prosecutor has made a good-faith effort to obtain his presence at trial; *State v. Brookins*, 478 S.W.2d 372 (Mo.1972); and the State must show the exercise of reasonable diligence to secure attendance of the witness at trial. *State v. Purl*, 183 S.W.2d 903 (Mo.1944). What constitutes due diligence turns on the facts of the particular case. *State v. Lloyd*, 337 Mo. 990, 87 S.W.2d 418 (1935)."

■ Appellant's complaint is that the state failed to exercise due diligence to procure the attendance of Ms. McShane because it failed to obtain a subpoena for her attendance at the trial and to serve it upon her. There was no showing that a subpoena had been issued for the witness's attendance on the day of the trial. The prosecutor did state that the witness's prior appearance was pursuant to a subpoena, which would have carried with it the obligation to appear at the trial upon proper notice. Rule 26.03. Even if the prosecutor's statement is not accepted as evidence of the facts stated the evidence does show that the witness was aware of her obliga-

tion to attend and advised the prosecutor of her inability to do so and the reason therefor. The witness's mother testified to her daughter's condition and to her physician's restriction upon her activity. Appellant argues that the physician himself should have been called to testify. The testimony offered was sufficient to justify the trial court's ruling. On the facts of this case, the state did exercise due diligence to obtain the presence of the witness. *Murphy.* The evidence further amply demonstrated the legal unavailability of the witness. 5 Wigmore on Evidence § 1406, pp. 219–220 (3rd Ed. 1974).

Appellant relies primarily upon *Barber v. Page*, 390 U.S. 719 (1968). *Barber* held that it was error to permit the reading of the preliminary hearing testimony of the *principal* witness against the defendant, when, subsequent to the preliminary hearing, the witness had been and was at the time of trial incarcerated in another state and no effort had been made to obtain his attendance at the trial. An obvious basis for distinction of *Barber* from the present case is to be found in the nature of the testimony of the witness involved. In *Barber,* the witness was a former codefendant, described as the source of the "principal evidence" against the defendant. In this case, the victim provided the "principal evidence" against appellant, and Ms. McShane's testimony was wholly cumulative. The arresting officers testified to the same matters as Ms. McShane. Her testimony did serve to bolster the officers' testimony that appellant had consented to the search which produced keys from his bureau and which were later identified as fitting the victim's auto. It might be noted that although appellant denied, on the hearing on the motion to suppress, that he had consented to the search of his mother's house, he made no such denial regarding the search of his living quarters upon his arrest.

In any event, in view of the nature of Ms. McShane's testimony any possibility of error in the receipt of her prior testimony would have been harmless beyond a rea-

sonable doubt and would afford no basis for relief on this appeal.

Judgment affirmed.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

MORGAN, P. J., DONNELLY, C. J., and RENDLEN, J., concur.

BARDGETT, J., not participating.