**STATE of Missouri, Plaintiff–Respondent,**

v.

**Clarence O. VANZANT, Defendant–Appellant.**

**No. 17241.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 3, 1991.

**706**

Ellen H. Flottman, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Presiding Judge.

The defendant Clarence O. Vanzant appeals his conviction by a jury of second degree burglary, a violation of § 569.170 RSMo 1986[1], and his sentence to four years imprisonment in accordance with the jury's recommendation.

Two issues presented on appeal are whether the trial court erred in admitting into evidence a "mug shot" of the defendant which showed sheriff's department in-

1. § 569.170.1 RSMo 1986 provides:
A person commits the crime of burglary in the second degree when he knowingly enters

formation and whether a jury instruction defining "proof beyond a reasonable doubt" allowed the jury to convict the defendant on a degree of proof below that required by due process. Finding no error, we affirm.

FACTS

On Saturday afternoon, November 25, 1989, John Stovall left his rural Dallas County home for work in Springfield, Mo. When he returned home at approximately 2:00 a.m. November 26, he found the back door of his home standing open and his deep freeze, located on the back porch, forced open. The freezer, which had been "so full of meat that I couldn't even put a bag of ice in there," had been "fairly well cleaned out." Stovall went to his barn where he found two of his hogs had been killed, butchered, and the meat taken. Stovall immediately notified authorities and advised Dallas County deputy sheriff Bill Trader that he suspected the defendant and two other men were the perpetrators.

Trader went to Springfield where, with the aid of Greene County sheriff's deputies, he interviewed the defendant at his home. The defendant permitted officers to enter his detached garage to look in his deep freeze. Trader testified that "across the top of the deep freeze there was a white hog laying on it, a full hog that had been gutted out." Inside the freezer were numerous packages of meat taken from Stovall's deep freeze. The defendant was arrested and taken to Dallas County where he ultimately was charged with burglary.

Stovall testified that on the weekend prior to the burglary and theft, the defendant and two other men had helped him butcher hogs. In return for their work, Stovall gave them meat from one hog which they took with them. On Saturday, November 25, the defendant, accompanied by two different men, returned to Stovall's farm to hunt. When the trio finished hunting, the defendant asked Stovall if he was going to

unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein.

butcher more hogs, and Stovall replied he was too busy and had to go to work. Stovall then sold the defendant a hog which the defendant took at that time.[2]

The defendant testified he purchased two hogs from Stovall on the 25th. When he and his companions returned, in Stovall's absence, to pick up the pigs, he inadvertently killed the wrong ones. He denied participating in the theft of meat from Stovall's freezer and said he was unaware the other two men had taken it until after the trio returned to his home in Springfield.

At trial Stovall and Trader were shown state's exhibit 10 which they identified as a photograph of the defendant as he appeared on November 25 and 26, 1989. In the photo the defendant was wearing a "tag" which read:

> Dallas Co. Sheriff
> Vanzant Clarence O
> DOB 2 12 58 BRN BLU
> BURGLARY 6 1 192
> DATE 11 26 89

Exhibit 10 was received into evidence over the defendant's objections that there was an incomplete foundation for its admission and it was not relevant. The tag was not covered or otherwise obliterated before the photo was shown to the jury.

Among the instructions given the jury was number 4, a faithful reproduction of MAI–CR3d 302.04, a pattern instruction that includes a definition of "proof beyond a reasonable doubt."

## ADMISSION OF MUG SHOT

In Point I the defendant alleges trial court error in admitting into evidence ex-

hibit 10, the mug shot, because the prejudicial impact of the photo outweighed its probative value. He contends the jury could have inferred from the photo that he had a prior criminal record and, from that inference, derived the improper conclusion that he must be guilty because the information tag in the photo was not masked, the jury was not told the photo was taken at the time of his arrest, and his identity was not an issue.

■ Use of a mug shot as evidence must be examined in the light of the facts and circumstances of each case. *State v. Morrison*, 545 S.W.2d 376, 378 (Mo.App. 1976). If a mug shot clearly shows that it was taken in connection with the arrest for the offense for which the defendant is on trial, the photo carries with it no inference that the defendant has a prior record. *State v. Johnson*, 618 S.W.2d 191, 193 (Mo. 1981). In the case before us, the jury heard evidence that the offense occurred on November 25, 1989, in Dallas County and that the defendant was arrested and returned to Dallas County on November 26. The jury was aware that the defendant was charged with burglary. The information tag shows the photo was made by the Dallas County sheriff's office, the agency investigating the offense. There is no reference to any other offense. *See Morrison*, 545 S.W.2d at 378–79. "Any ordinary intelligent juror would have known that this particular photograph had been taken in connection with the investigation of the charge for which [the defendant] was then being tried." *State v. Poor*, 533 S.W.2d 245, 250–51 (Mo.App.1976). The defendant's defense was not prejudiced by the admission of exhibit 10.[3]

---

**2.** Stovall said the defendant wanted to buy his largest hog, a Yorkshire, an all-white breed. Stovall declined and the defendant purchased a "blue butt" which Stovall described as half-Hampshire and half-Yorkshire. The large Yorkshire was one of the purportedly purloined swine. Asked if he *still* owned it, Stovall replied, "Well, yes. It's in my deep freeze. I had to clean it."

**3.** Opinions relied upon by the defendant do not support his claim of trial court error. In *State v. Motley,* 740 S.W.2d 313 (Mo.App.1987), the

eastern district described as erroneous the trial court's admitting into evidence "mug shots" from a police ledger book. Each photo contained the words "St. Louis Police Department" and an identification number. (The court held the error was harmless because of the "overwhelming identification evidence" of defendant's guilt.) The *Motley* court stated the principle that, "for mug shots to be admissible, inculpatory information must first be removed." *Id.* at 317. In the case before us, the "tag" that appeared in the photo contained no inculpatory information about other crimes. *Compare State*

## INSTRUCTION DEFINING "REASONABLE DOUBT"

 In point II the defendant asserts the trial court erred in giving, as Instruction 4, MAI–CR3d 302.04 which defines "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." He contends the definition allowed the jury to convict him "based upon a degree of proof that was below that required by the due process clause."

The defendant concedes that this claim of error was not preserved for our review. The defendant did not object to the instruction at trial and did not raise the issue in his new trial motion. Accordingly, we review for plain error.[4]

The defendant's claim that the definition of "reasonable doubt" in MAI–CR3d 302.04 is unconstitutional because it dilutes the state's burden of proof has been rejected repeatedly by the Missouri Supreme Court. *See, e.g., State v. Murray*, 744 S.W.2d 762, 771 (Mo.banc), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Antwine*, 743 S.W.2d 51, 62–63 (Mo.banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

The defendant argues that *Cage v. Louisiana*, —— U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), changes Missouri law. We do not agree. *See State v. Turner*, 810 S.W.2d 92, 94 (Mo.App.1991). The challenged instruction in *Cage* is dissimilar to MAI–CR3d 302.04. In *Cage*, the instruction equated "a reasonable doubt" with a "doubt as would give rise to a grave uncertainty" and an "actual substantial doubt" and stated that "[w]hat is required is not an absolute or mathematical certainty, but a moral certainty" that the defendant is guilty. 111 S.Ct. at 329–30. In contrast, the "firmly convinced" language of MAI–CR3d 302.04 is substantially the same as that found in federal jury instructions and has been employed in federal and state courts alike. *Antwine*, 743 S.W.2d at 62. The definition is intended to assist lay jurors in their understanding of the legal phrase "proof beyond a reasonable doubt" and it achieves that purpose without lowering the standard below that required by due process. *Id.* at 62–63.

The defendant's point is governed by *Murray* and *Antwine;* not by *Cage.* Accordingly, it is denied.

Judgment affirmed.

FLANIGAN, C.J., and MAUS, J., concur.

---

*v. Quinn,* 693 S.W.2d 198 (Mo.App.1985), in which the court noted the rule that "when a photograph includes printed information indicating *prior* criminal activity, the photograph is not properly admitted without the printed information first being masked." *Id.* at 200 (emphasis added). The defendant's other case, *State v. Moore,* 726 S.W.2d 410 (Mo.App.1987), states the general rule from *Quinn* that "testimony concerning photographs which clearly connects them to *prior* criminal activity may be prejudicial." *Id.* at 413 (emphasis added).

**4.** Rule 29.12(b) provides:

Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.