**STATE of Missouri, Plaintiff–Respondent,**

v.

**Carlos E. SNOWDEN, Defendant–Appellant.**

**No. SD 29210.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 1, 2009.

Melinda K. Pendergraph, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Chief Judge.

Carlos Eugene Snowden ("Defendant") appeals his conviction of unlawful use of a weapon, pursuant to section 571.030.[1] Defendant presents three issues on appeal, contending that the trial court erred in overruling (1) his objection to allegedly being led past a potential juror in the hallway outside of the courtroom while still handcuffed; (2) his objection to and the subsequent admission into evidence of his booking photograph; and (3) his objection to and the subsequent admission into evidence of a photograph showing the knife seized from his home on the night of the offense next to a ruler on which the words "D.A.R.E. TO RESIST DRUGS AND VIOLENCE" are inscribed. Finding no merit in Defendant's claims, this Court affirms the judgment of conviction.

### Factual and Procedural Background

We view the evidence presented at trial in the light most favorable to the verdict. *State v. Storey,* 901 S.W.2d 886, 891 (Mo.

---

1. All statutory references are to RSMo Cum. Supp.2003, unless otherwise indicated.

banc 1995). In that context, evidence adduced at trial revealed the following.

Defendant is J.W.'s ("Victim") step-father, and had known Victim for approximately six years at the time of the offense. In the late-night or early-morning hours of March 18 and 19, 2007, then-thirteen-year-old Victim was at home with Defendant; her mother; her cousin, W.W.; and a friend, J.F. Victim was in the back room of the home watching television with W.W. and J.F. Defendant came into the room and asked Victim, "[A]re you ready to get done with my hair[?]" When Victim responded that she had a stomachache, Defendant replied, "I'm going to be up in here in five minutes, and if you ain't up, I'm going to come back in there." Defendant left the room and returned a few minutes later. At that time, Defendant appeared angry and yelled at Victim, telling her, "[Y]ou need to get up and do my hair, you ain't too young to die." Defendant then once again left the room.

When he returned a short time later, Defendant was holding a long knife with a brown handle. Defendant approached Victim, swinging the knife at her face, and yelled, "[Y]ou need to get up and do my hair, right now." Victim felt threatened by Defendant, and was afraid that Defendant was going to cut or stab her; J.F. was also frightened. After approximately five minutes, Defendant again left the room; shortly thereafter, both Victim and J.F. heard what sounded like Defendant throwing the knife into the sink.

At that point, Victim went around the house looking for her mother. After Victim told her mother what had happened, her mother went looking for Defendant. Victim returned to the back room, where W.W. and J.F. still sat watching television. Victim could hear her mother and Defendant arguing elsewhere inside the house, and she heard Defendant yell, "[S]he ain't

too young to die." Victim then went to see if her mother was still with Defendant and, when she was not, Victim exited the house through the front door, with Defendant following her. She went around the house to the back door and grabbed the cordless phone, but it did not work. Victim then once again went outside, this time running down the street to a gas station where she used an outdoor payphone to dial 911.

Officers Phillip Caldwell and Al Fisher of the Kennett Police Department responded to Victim's call and met her at the gas station. They found Victim to be "shaken up" and scared. After Victim described what had happened, the officers accompanied Victim back to her home. The officers conducted a cursory search of the inside of the home and discovered a long knife with a brown handle in the kitchen sink. Victim identified it as the same knife Defendant had used to threaten her. After taking statements from the other individuals present during the confrontation, the officers arrested Defendant.

Defendant was charged with unlawful use of a weapon, pursuant to section 571.030. The charge included an allegation that Defendant was a prior and persistent offender, pursuant to section 558.016, RSMo Cum.Supp.2005. Before the start of trial, the State presented evidence of two of Defendant's prior felony convictions for burglary, and the trial court found Defendant to be a prior and persistent offender.

Also before trial, Defendant presented a number of motions *in limine;* only those relevant to this appeal are discussed here. Defendant challenged the use of two photographs as State's evidence. The first photograph shows the brown-handled knife found by the officers in Defendant's kitchen sink on the night of the confrontation next to a ruler with the "D.A.R.E." logo and slogan on it. The slogan reads, "TO

RESIST DRUGS AND VIOLENCE." Defendant argued that the ruler—and in particular, the "D.A.R.E." slogan—improperly injected the idea of violence into the proceedings, and invoked an association with police activity. The trial court overruled the motion, finding that the probative value of demonstrating the length of the knife "would far outweigh any prejudicial impact" that might result from the words on the ruler. The trial court also noted that police activity was already part of the case because officers would be testifying. The second photograph shows Defendant on the night of his arrest, dressed in a striped jail uniform and standing in front of a height chart. Defendant contended that the photograph was unnecessary, as the only relevant physical part of Defendant was his hair, which could be described by witnesses without showing Defendant wearing "jail stripes." The trial court also overruled this motion.

Just before the jury panel was called into the courtroom to begin voir dire, Defendant objected to the manner in which he was brought into the courtroom before the start of proceedings. Although Defendant was not handcuffed during the actual proceedings, he was in handcuffs while being transported to the courtroom. Defendant contended that while handcuffed in the hallway outside of the courtroom, he was led past a potential juror. Defendant claimed that his appearance in handcuffs outside the courtroom "possibly inflamed the jury against [him.]" The trial court overruled his objection, stating that,

> [A]s far as this one incident, he was not in shackles, he was ... not in bellybands or leg irons. He did have a set of handcuffs, he was well[-] dressed in trousers ... a dress shirt, tie, a long blazer, and, I, I don't believe that this is an issue that calls for the [trial] [c]ourt to order a mistrial at this time.

The trial court admonished both the bailiff and the sheriff to make sure Defendant was not in handcuffs while in the potential view of the jury again.

Following a brief jury trial, Defendant was convicted of unlawful use of a weapon. Defendant resurrected each of the motions *in limine* discussed *supra*, as well as his objection to the use of handcuffs, in his motion for new trial. At a hearing on that motion, the State elicited testimony from the bailiff, Joe Brumley. Brumley testified that it is the policy of the sheriff to handcuff all inmates during transport from the jail and to remove the handcuffs once an individual is inside the courtroom. Brumley further stated that when Defendant was being led through the courthouse and into the courtroom, he was restrained by only a pair of thin, black handcuffs. Defendant was clad in a dark suit jacket, which "basically covered" the handcuffs. Defendant's hands were in front of his body and were clasped together. Brumley testified that he would "have [had] to look close to see" Defendant's handcuffs, and that he was unsure if the handcuffs were visible at all. The trial court then noted that at all relevant times when Defendant was in handcuffs, the jury had not yet been selected and seated, and all potential jurors were outside of the courtroom.

Although the trial court acknowledged that the sheriff's policy of leaving handcuffs on prisoners while inside the courthouse was a "cause for concern" for the trial court, it overruled Defendant's motion on that point. The trial court noted that any potential jury exposure "was very minimum, if any[,]" lasting at most five to ten seconds. It also emphasized that "there may have ... been the possibility that the jurors may not have even realized that [Defendant] was restrained when he was brought up to the courtroom." Finally, the trial court referenced each juror's

statement during voir dire that he or she could give Defendant "a fair trial based on the evidence given" and on the jury instructions.

Defendant rested on his motion for his remaining points, all of which were ultimately overruled by the trial court. In its ruling, the trial court mentioned only one other point specifically, that challenging the admission of the photograph showing the knife next to the "D.A.R.E." ruler. It noted that it did not find the picture prejudicial to Defendant and that it did not find the use of either the ruler or the picture to have been "in bad faith." The trial court then proceeded to sentence Defendant. After citing Defendant's thirteen prior felony convictions—implicitly referencing the prior ruling finding Defendant to be a prior and persistent offender—the trial court sentenced him to six years' imprisonment. This appeal followed.

### Discussion

Defendant presents three points for our review. We address them in the order presented.

### No Error in Overruling Objection to Possible Juror Exposure to Defendant's Handcuffs

■ Defendant first claims that the trial court erred in overruling his objection to the manner in which he was brought into the courtroom. Defendant argues that "the restraints implied to the jury that he was a dangerous person and probably guilty and the restraints were inherently prejudicial[,]" thus violating his right to a fair trial. This Court disagrees.

■ It is undisputed that a defendant "has the right to appear before a jury unfettered unless good cause is shown." *State v. Sanders*, 903 S.W.2d 234, 238 (Mo. App.1995) (citing *State v. Gilmore*, 661 S.W.2d 519, 525 (Mo. banc 1983)). *See* *also Deck v. Missouri*, 544 U.S. 622, 625, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) ("The law has long forbidden routine use of visible shackles during the guilt phase [of a defendant's trial]; it permits a State to shackle a criminal defendant only in the presence of a special need."). Defendant relies almost exclusively on this proposition, and heavily on *Deck*, to support his claim, asserting that prejudice against him was presumed when he walked past a potential juror wearing handcuffs. With such a presumption, Defendant argues, the burden shifts, and the State must then demonstrate that the restraint was warranted. *Deck*, 544 U.S. at 635, 125 S.Ct. 2007.

*Deck*, however, states only that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints *visible to the jury* absent a trial determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id.* at 629, 125 S.Ct. 2007 (emphasis added). Furthermore, both the underlying facts and the issue in *Deck* differ substantially from those in the case at bar. In *Deck*, the defendant was convicted of first-degree murder and sentenced to death. *Id.* at 624–25, 125 S.Ct. 2007. After his sentence was overturned by our Supreme Court, Deck was granted a new sentencing proceeding. *Id.* at 625, 125 S.Ct. 2007. Throughout that proceeding, "Deck was shackled with leg irons, handcuffs, and a belly chain." *Id.* The sentencing court overruled multiple objections by trial counsel, eventually stating that "[Deck's] 'being shackled takes any fear out of [jurors'] minds.'" *Id.* (internal citation omitted). Thus, *Deck* involved the extension of the prohibition of visible shackles without good cause during the guilt phase of a trial to the sentencing phase and involved obvious shackles and restraints during the proceeding itself.

*Deck* does not address the use of handcuffs—or any other type of physical restraint—during the transport of an inmate.

The analysis in *State v. Merrick*, 257 S.W.3d 676 (Mo.App.2008), is on point. In *Merrick*, the defendant was shackled while being transported to and from the courtroom, including for recesses during the trial. *Id.* at 679–80. In his motion for new trial, Merrick alleged that jurors saw him in shackles during transport, but provided no evidence to the trial court that any such viewing occurred. *Id.* This Court found that Merrick had "failed to make the requisite showing that a juror actually observed him being escorted to and from the courtroom in shackles." *Id.* at 680 (citations omitted). In the absence of such a preliminary showing of actual visibility to a potential juror, the presumptive prejudice of visible shackles as discussed in *Deck* does not arise.

Like in *Merrick*, Defendant in this case failed to demonstrate to the trial court that any juror actually saw him restrained during his transport. The only evidence pertaining to juror observation of Defendant in his handcuffs, aside from Defendant's own allegation in his motion for new trial, was the bailiff's equivocal testimony that Defendant's handcuffs were likely covered by his jacket and that he was unsure if anyone could actually see them. "A bare assertion by [Defendant] does not prove itself and is not evidence of the facts presented." *State v. Smith*, 996 S.W.2d 518, 523 (Mo.App.1999). The record "is devoid of any proof that any jurors actually observed Defendant in shackles, and an appellate court 'will not speculate as to whether they did.'" *Merrick*, 257 S.W.3d at 680 (quoting *Lytle v. State*, 762 S.W.2d 830, 834–35 (Mo.App.1988)).

"Moreover, a brief, inadvertent exposure of the jury to a handcuffed defendant while [the] defendant is being escort-ed from one place to another does not deprive [the] defendant of a fair trial." *Sanders*, 903 S.W.2d at 239 (citing *State v. Beal*, 470 S.W.2d 509, 515–16 (Mo. banc 1971); *State v. Clements*, 849 S.W.2d 640, 647 (Mo.App.1993)). *See also Smith*, 996 S.W.2d at 523; *State v. McMillian*, 779 S.W.2d 670, 672 (Mo.App.1989); *State v. Bonnarens*, 724 S.W.2d 287, 289 (Mo.App. 1987); *State v. Edwards*, 714 S.W.2d 786, 789 (Mo.App.1986). "This is so because it is a normal and regular, as well as a highly desirable and necessary, practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this." *Smith*, 996 S.W.2d at 523. Defendant's first point is denied.

### No Error in Admission of Photographs

In his second and third points, Defendant contends that the trial court abused its discretion in admitting two photographs into evidence. The trial court "has broad discretion to admit or exclude evidence at trial." *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005). We reverse a trial court's ruling on the admission of evidence "only if the court has clearly abused its discretion." *Id.* "That discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Gonzales*, 153 S.W.3d 311, 312 (Mo. banc 2005). Furthermore, on direct appeal, we review the action of the trial court "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Middleton*, 995 S.W.2d 443, 452 (Mo. banc 1999). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006) (citing *State v. Barri-*

*ner*, 111 S.W.3d 396, 400–01 (Mo. banc 2003)).

Photographs as evidence may be admitted in order to corroborate or refute testimony, as well as to assist the jury in better understanding testimony. *State v. Moyers*, 266 S.W.3d 272, 284 (Mo.App. 2008). A photograph is generally considered superior to words as a means of description; thus, a photograph cannot be rendered inadmissible merely because other evidence communicates the contents of the photograph. *Id.*; *State v. Smith*, 185 S.W.3d 747, 756 (Mo.App.2006). Further, a photograph "should not be rejected because by presenting an accurate portrayal it tends to be inflammatory." *Smith*, 185 S.W.3d at 756.

Defendant's second point contends error in admitting into evidence the photograph of Defendant during his booking on the night of his arrest, clad in jail clothes and standing in front of a height chart. Defendant argues that the photograph "suggested to the jury that he was a dangerous person who needed to be separated from the community [and] that he was probably guilty[.]" This Court disagrees.

Booking photographs represent a unique sub-class of photographs, and require special attention when sought to be used as evidence. The use of "mug shots" in a criminal trial must be examined in light of the particular facts and circumstances of each individual case. *State v. Vanzant*, 814 S.W.2d 705, 707 (Mo.App. 1991) (citing *State v. Morrison*, 545 S.W.2d 376, 378 (Mo.App.1976)). Although such photographs can carry an inherent prejudice through implying that a defendant has a prior criminal record and is therefore dangerous, "[i]f a mug shot clearly shows that it was taken in connection with the arrest for the offense for which the defendant is on trial, the photo carries with it no inference that the defendant has a prior record." *Vanzant*, 814 S.W.2d at 707 (citing *State v. Johnson*, 618 S.W.2d 191, 193 (Mo. banc 1981)).

The photograph was relevant to corroborate both Victim's and J.F.'s testimony that Defendant was angry with Victim because she would not braid his hair, as well as to assist the jury in understanding that testimony in light of the fact that Defendant changed the appearance of his hair significantly between his arrest and trial. The situation at hand aligns closely with that in *Vanzant*, in which a "mug shot" was deemed appropriately admitted. In *Vanzant*, testimony revealed that the defendant was arrested on the day following the offense. *Vanzant*, 814 S.W.2d at 707. The court in that case noted that the jury was aware of Vanzant's charge in the underlying case, and thus was able to make the connection between the "mug shot" and the case being tried. *Id.* Similarly, in the instant case, testimony showed that Defendant was arrested the same night as the offense. Even more compelling in this case is that Victim expressly testified that the photograph depicted Defendant as he appeared on the night of the offense. Moreover, Victim testified that Defendant changed the style of his hair between offense and trial. "Any ordinary[,] intelligent juror would have known that this particular photograph had been taken in connection with the investigation of the charge for which [Defendant] was then being tried[,]" *State v. Poor*, 533 S.W.2d 245, 250–51 (Mo.App.1976), and afforded it no more weight than appropriate.

Defendant cites *Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), and *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), in support of his claim that the "constant reminder of the accused's condition implicit in such distinctive identifiable attire may

affect a juror's judgment." *Estelle*, 425 U.S. at 504–05, 96 S.Ct. 1691. Such reference is misplaced, however, as both cases deal not with the admission of photographs depicting a defendant in prison garb, but with a defendant dressed in prison clothes throughout the duration of the actual trial. Defendant also argues that the photograph was not relevant because witness testimony could and would provide the same information regarding Defendant's appearance on the night of the offense. As discussed *supra*, a relevant photograph is not inadmissible simply because other evidence also describes its contents; rather, photographs can and should be used, if possible, to corroborate testimony. *Moyers*, 266 S.W.3d at 284. Finally, Defendant claims that, because Defendant did not challenge the state of his hair at the time of the offense, the admission of the photograph had minimal, if any, probative value that was outweighed by its prejudice against him. This Court is unaware of any requirement that an issue be actively disputed in order for evidence to be presented on that issue during trial. The photograph was relevant to corroborate Victim's testimony and to assist the jury in visualizing Defendant's appearance at the time of the offense, and the trial court did not abuse its discretion in allowing its admission. Defendant's second point is denied.

■ Defendant's final point challenges the admission of the photograph showing the knife used in the offense next to a "D.A.R.E." ruler. He argues that the photograph contains "extraneous, prejudicial references to the [D.A.R.E.] program" as well as an impermissible reference to drugs and violence. As such, Defendant contends that the photograph's prejudicial nature outweighed any probative value in demonstrating the length of the knife, particularly because a witness could have testified as to the length of the knife, and

because the photograph could have been cropped to remove the ruler from the picture. This Court disagrees.

The photograph Defendant challenges shows the knife police found in the kitchen sink, which Victim identified as being the knife that Defendant held in his hand while threatening her. In the photograph, the knife is shown next to a ruler with the words "D.A.R.E." and "TO RESIST DRUGS AND VIOLENCE"—the program's logo and slogan—written on it. As an element of the charged offense against Defendant, the State was required to prove beyond a reasonable doubt that the knife Defendant used to threaten Victim was "readily capable of lethal use." Section 571.030.1(4). The length of the knife, and therefore the photograph depicting that measurement, thus had probative value for the State. Again, as previously discussed *supra*, the fact that a witness could have testified as to the length of the knife does not in itself render the photograph inadmissible. *Smith*, 185 S.W.3d at 756.

Defendant contends that the D.A.R.E. logo and slogan improperly injected the concept of drugs and violence into his trial, unfairly prejudicing the jury against him and using evidence extraneous to the underlying issue. He fails to expound upon how he was actually prejudiced, however, beyond his own opinion that "the improper references to drugs and violence *could* prejudice the accused." (Emphasis added). Furthermore, the case law cited by Defendant amounts to little more than cases in which prejudicially-labeled evidence or substantive evidence extraneous to the issue to be decided was deemed unfairly prejudicial or otherwise inadmissible. *See State v. Sanders*, 634 S.W.2d 525 (Mo.App.1982) (rape case in which three photographs with the word "rape" handwritten on them were improperly admit-

ted); *State v. Himmelmann*, 399 S.W.2d 58 (Mo. banc 1966) (assault case in which a photograph of the defendant's car containing an empty liquor bottle was improperly admitted because the defendant's being drunk was not an issue in the case); *State v. Garrett*, 564 S.W.2d 347 (Mo.App.1978) (narcotics case in which the search warrant and police affidavits were improperly admitted because the defendant did not challenge the validity of the search and seizure); and *State v. Crane*, 559 S.W.2d 294 (Mo.App.1977) (evidence of the reputation of an "associate" of the defendant who was uninvolved in the underlying crime was improperly admitted).

In the case at bar, the D.A.R.E. program name and slogan on the ruler at issue was not put there by an intentional affirmative act of the police to indicate anything related to the charge against Defendant or to imply some other bad act on the part of the Defendant, but was clearly part of a promotional item referencing the D.A.R.E. program—a well-known children's program run by the police. That promotional item was used for the purpose for which it was intended, i.e., measuring an item. A reasonable juror would understand that the promotional words on the ruler bore no relationship to Defendant's innocence or guilt on the charged offense. Given that the length of the knife went directly to one of the elements the State was required to prove at trial and Defendant's failure to articulate or demonstrate any actual prejudice to him by its admission into evidence, this Court cannot say that the trial court abused its discretion in admitting it into evidence.[2] Defendant's third point is denied.

2. Obviously, to avoid the possibility of actual prejudice in any given circumstance, the best practice is for law enforcement to use as a

*Decision*

The judgment of the trial court is affirmed.

BURRELL, P.J., and PARRISH, J., concur.

reference a standard ruler without any extraneous words or symbols on it.